WILLIAM F. SHERMAN *vs.* ELLEN WILLIAMS & others.

A lease of a " building " conveys the land under the eaves, if that land be owned by the the lessor.

The erection, by authority of the lessor, of a wall upon land under the eaves of a leased building is a breach of the covenant of quiet enjoyment.

CONTRACT to recover damages for the violation by the defendants of their covenant for quiet enjoyment in a lease " of a certain brick building situated in said Boston, on Milk Street, so called, opposite the Old South Church, and numbered 5, 7, and 9, on said

street." The lease was made October 1, 1868, for the term of seven years and six months from that day.

At the trial in this court the plaintiff offered evidence that upon the execution of the lease he entered into occupation of the premises, and expended about $5000 in repairs, and by himself and by tenants under him continued in the use of the building; that at the time of the execution of the lease there was an open space six or eight feet wide, southerly and southwesterly of the demised building, belonging wholly, except a strip ten inches wide, to other parties than the defendants; that Davis, one of the defendants, during the negotiation for the lease, told him that some of the open space belonged to the defendants; and it was admitted at the trial that in fact they then owned a strip beyond the wall of the building, parallel with the side thereof, ten inches wide and twenty-seven feet six and one half inches long; that there was in fact no access to this strip, except by a passage way across an adjoining estate belonging to other parties, or by going out of the windows; that the coving and eaves of the demised building extended out from the wall about ten inches over this strip for a part. of the way, and for a part of the way a distance less than ten inches; and that the droppings from the eaves were carried off from them by a gutter along the coving; that the plaintiff, by going through the passage way and out of the windows, had made some use of this strip for keeping boxes, barrels and lumber; that there were nine windows in the rear wall of the building, over the ten-inch strip, giving light and air to the rear of the building; that these windows were in an extension of the original building, built beyond its original rear wall; that Henry W. and William H. Dutton, in 1869, became the owners of the estate adjoining southerly and southwesterly on the demised estate, and being about to build thereon, excavated for their foundations, on their own premises, twenty-five feet below the surface of the premises leased to the plaintiff, and were proceeding to erect the "Transcript Building" on Washington and Milk Streets, with a wall along the whole line of the demised premises, some thirty feet higher than the top of the leased building; that in consequence of this excavation there was danger that the leased

building would fall, and that portions of the wall and of the floor had fallen out; that thereupon the plaintiff gave notice to the defendants that there was danger of the wall falling out; that the building was then braced up, and a cellar twenty feet deep was dug within ten inches of it, so that the building was liable to sink down, and so that the eastern wall was broken through; that after this the defendants and the Duttons entered into an agreement, dated April 28, 1871, the material portion of which was as follows:

" Whereas said Duttons are about to erect a building on their said parcel of land, and the parties hereto have agreed upon building a party wall between their respective estates, as hereinafter provided:" "Said Duttons shall, at their own expense, build said wall in the manner following; namely, on the line of twenty-seven feet six and one half inches, as shown on said plan. Said wall shall be of the thickness of two feet below the level of the first or street story flooring of the building to be erected by said Duttons, and of the thickness of sixteen inches above said level, and the centre line of said wall shall be two inches northeasterly from said line of twenty-seven feet six and one half inches, and parallel therewith, provided that the title to said two inches belonging to said parties of the first part is not hereby divested; said parties of the first part shall have the right to use the wall so to be built, or any part thereof, for the purposes of a party wall, whenever they shall see fit; and shall pay said Duttons, whenever they shall use the same, one half the value of so much thereof, to the depth of four inches, as the outline of any building they shall erect may cover, and to the height and length they shall use the same."

There was evidence that when this agreement was made, all parties had notice of the plaintiff's lease; that in the summer and autumn of 1871, the Duttons built the wall, as set forth in the agreement, carrying it up to a height above the demised building, and dug under the underpinning of the building, by which the floor gave way to some extent; that they, by this wall, which was built close to the wall of the building, closed up all the nine windows, entirely excluding light and air from that side of the build-

ing, and making some rooms totally dark, airless and useless; that they cut off the coving and eaves and gutter, by reason of which the plaintiff had been damaged by rain-water, and injured to the amount of several thousand dollars a year; that the plaintiff had brought suit for these injuries against the Duttons, which suit was pending in this court; and that he had paid his rent and performed all the covenants in the lease on his part to be performed.

Upon this evidence, *Morton*, J., directed a verdict for the defendants, and reported the case for the determination of the full court, with the agreement that, if the action could not be maintained, the verdict was to stand; if it could be maintained, the verdict was to be set aside, and the case was to stand for trial.

*J. B. Richardson*, for the plaintiff.

*C. T. Russell*, for the defendants.

ENDICOTT, J. The first question to be determined on this report is, Did the lease include the strip of land ten inches wide under the eaves in the rear of the brick building? Did it pass under the description, "a certain brick building situated in said Boston, on Milk Street, so called, and numbered five, seven and nine, on said street?" The strip ten inches wide was substantially covered by the eaves of the building, and was owned by the defendants. The well settled rule that the grant of a house carries with it the title to all the land under the house which the grantor owns, extends to all the land covered or occupied by the house itself. As the eaves are a part of the building, the land under them is included in the description, when owned by the grantor. Where land is conveyed, bounded on a house as a monument, the land to the edge of the eaves only passes, that being the extreme part of the building; so where the house itself is granted or demised, the extreme parts of the house are the bounds and limits of the conveyance, and such title as the grantor has to the land thus occupied by the whole house passes by the grant or demise. *Millett* v. *Fowle*, 8 Cush. 150. *Carbrey* v. *Willis*, 7 Allen, 364, By the conveyance of a mill, the land under the mill and its overhanging projections passes. *Blake* v. *Clark*, 6 Greenl. 436. We are of opinion, therefore, that all the land under the eaves was included in the lease, and passed as parcel under the description of the 'brick building."

As this land passed under the lease to the plaintiffs, it becomes necessary to inquire whether they were disturbed in their enjoyment of the demised premises by the acts of the defendants, and can maintain this action for breach of the covenant for quiet enjoyment.

Upon the facts stated in the report, it appears that the party wall between the demised premises and the adjoining estate, belonging to the Duttons, was built in part upon the land under the eaves in rear of the brick building included in the lease to the plaintiffs. This wall was built by the Duttons under an agreement with the defendants, and by their authority, and for their benefit. This authority was given under an assumption of right, and by a formal agreement to which the plaintiffs were not parties. The act of the Duttons in building the wall under these circumstances must, therefore, be taken as the act of the defendants done under an assumption of title, and is a breach of the covenant for quiet enjoyment. The defendants covenanted against their own acts, and the Duttons built the wall on the demised premises by their authority. It was not the act, therefore, of a stranger, but of the lessors. *Crosse* v. *Young*, 2 Show. 425. *Hurd* v. *Fletcher*, 1 Doug. 43. *Lloyd* v. *Tomkies*, 1 T. R. 671. *Mayor of New York* v. *Mabie*, 3 Kernan, 151. Its effect was to deprive the plaintiffs of so much of the demised premises as the party wall covered, by the erection of a permanent structure thereon changing the character and beneficial enjoyment thereof, and the defendants are responsible therefor, without further proof of the intent. *Royce* v. *Guggenheim*, 106 Mass. 201. *Upton* v. *Townend*, 17 C. B. 30.

Where a tenant is evicted from a material portion of the premises, he may treat it as an eviction from the whole, and may abandon his lease, and he is not responsible for rent; nor, if he retains possession of the remainder, can the lessor recover the rent. *Leishman* v. *White*, 1 Allen, 489. *Morrison* v. *Chadwick*, 7 C. B. 266. *Christopher* v. *Austin*, 1 Kernan, 216. But if he prefers to retain possession of that portion from which he has not been evicted, he may maintain an action for the breach of the covenant for quiet enjoyment.

In an early case where a messuage with a garden was leased, a covenant for quiet enjoyment was held to be broken by the erection of a building on part of the garden. *Kidder* v. *West*, 3 Lev. 167. *Morris* v. *Edgington*, 3 Taunt. 24. *Andrews* v. *Paradise*, 8 Mod. 318. *Rhodes* v. *Bullard*, 7 East, 116.

In *Ellis* v. *Welch*, 6 Mass. 246, it was held that a lessee could not maintain an action on this covenant against his lessor, by reason of the laying out of a town way over a portion of the demanded premises. See *Dudley* v. *Folliott*, 3 T. R. 584. But the case is put expressly on the ground that the lessee, equally with his lessor, has his remedy under the statute against the town. The court says that the conclusion is supported on principle by the cases deciding that a general covenant in a lease for quiet enjoyment extends only to entries and interruptions by those who have title. If the way had been laid out by the lessor, the case would have fallen within the principle stated. See also *O'Keefe* v. *Kennedy*, 3 Cush. 325 ; *Dexter* v. *Manley*, 4 Cush. 14 ; *Whitney* v. *Dinsmore*, 6 Cush. 124 ; *Estabrook* v. *Smith*, 6 Gray, 570 ; *Sprague* v. *Baker*, 17 Mass. 586. The plaintiffs may, therefore, maintain this action against the lessors, and recover damages for such injury as they have suffered by the erection of the party wall on the land included in their lease. But they cannot recover for any alleged injury arising from the erection of the wall on the land of the Duttons. *Royce* v. *Guggenheim, ubi supra.*

*Case to stand for trial.*