## OKIE *v.* PERSON.

---

LANDLORD AND TENANT; PAROL EVIDENCE TO VARY WRITTEN CONTRACT; BOUNDARIES; LATENT AMBIGUITIES; SURRENDER; ACCEPTANCE; SET-OFF; DAMAGES; JUSTICE OF THE PEACE APPEALS.

1. Where a dwelling house is situated in the midst of a comparatively large tract of land, the nearest fence or hedge may ordinarily be presumed to be the boundary unless the contrary is made in some way to appear.

2. Where a dwelling house situated in the midst of a comparatively large tract of land is leased by no other description than "No. 3219 U street northwest, the same being a dwelling," a latent ambiguity exists in such lease, which may be removed by parol evidence of statements made by lessor to lessee prior to the execution of the lease, as to the extent of the property leased.

3. In an action for two months' unpaid rent due in advance on the 20th day of each month, where the defense is a surrender of the demised premises and acceptance of such surrender during the first month after the rent day, under an agreement that no rent should be paid while the demised premises were being remodeled, evidence is admissible showing that, before the execution of the lease, the lessor had promised that no rent should be charged during the process of remodeling, and that after the surrender and before the expiration of the term lumber had been stored upon the premises.

4. Where the defense to an action for two months' unpaid rent due in advance on the 20th day of each month is a surrender of the demised premises during the first month, after the rent day, and acceptance of such surrender, evidence that lumber had been stored on the demised premises prior to the 20th day of the second month is admissible as tending to discharge the liability of defendant for rent due during the second month.

5. A surrender of demised premises, accepted by the lessor, ends the relation of landlord and tenant; and when the surrender is between rent days, the tenant is, in the absence of special agreement to the contrary, discharged from all liability for rent even for the period between the surrender and the last rent day.

6. A surrender of demised premises between rent days, and an acceptance thereof by the lessor, when the rent is payable in advance, does not discharge the tenant from liability for rent up to the next rent day, in the absence of a special agreement to the contrary.

7. If a lessor enters and evicts a tenant wrongfully from a part of the demised premises, the eviction operates as a suspension of the entire rent until possession shall be restored. The lessor cannot lawfully apportion his own wrong and charge the lessee for the use and occupation of the portion which has been left to him.

8. In an action for unpaid rent where the defense is eviction from a portion of the demised premises, a plea of set-off claiming "damage accruing to defendant for breach of the covenant for quiet enjoyment and amount due for use and occupation by plaintiff of demised premises," is broad enough to cover any damage accruing from the eviction, especially in a suit instituted before a justice of the peace, by whom the decision is required to be, not in accordance with legal principles alone, but in accordance "with the equity and right of the matter." (D. C. Code, § 80.)

No. 1375.   Submitted December 9, 1903.   Decided January 19, 1904.

HEARING on an appeal by the plaintiff from a judgment of the Supreme Court of the District of Columbia upon the verdict of a jury, in an action to recover rent claimed to be due under a lease.                                      *Affirmed.*

The COURT in the opinion stated the case as follows:

By an instrument of writing dated on August 27, 1901, the appellant, Mrs. Susan P. Okie, leased to the appellee, Robert S. Person, certain premises in that part of the city of Washington formerly known as Georgetown, which premises are designated in the lease or instrument of writing as "No. 3219 U street northwest," "the same being a dwelling," the lease being by the year, commencing on the 20th day of September, 1901, at and for the yearly rent of $480, payable in monthly instalments in advance—that is, the sum of $40 on the execution of the lease and $40 on the 20th day of each ensuing month thereafter. The lessee covenanted to pay the water rent and gas bills, to use the premises only for a dwelling house, not to sublet the same without the written consent of the lessor, and to deliver up the house in good order at the end of the tenancy.

The appellee entered into possession, and no difficulty arose until about March 1, 1902, when the appellant entered upon a portion of the land which the appellee claims to have been included in the demise to him, and against the protest of the appellee commenced the erection of some houses thereon. The work of construction became offensive and annoying to the appellee; and about August 1, 1902, he abandoned the premises to the appellant. He claims that she at that time accepted the surrender of them. The instalment of rent, payable by the lease on July 20, 1902, remained unpaid; and no rent was paid on August 20, 1902. Thereupon, on September 18, 1902, the appellant entered suit before a justice of the peace for the sum of $83, namely, $40 a month for each of the two months beginning

July 20 and August 20, 1902, and $3 for water rent for the months of July, August, and September, 1902.

The cause was removed into the supreme court of the District. There the defendant, here the appellee, pleaded the general issue, and a special plea of set-off for the sum of $150, for damage alleged to have accrued to the defendant "for breach of the covenant for quiet enjoyment, and amount due for use and occupation by plaintiff of demised premises." Upon trial before the court with a jury there was a verdict for the defendant, and thereupon judgment for the defendant that he go without day and recover costs; and from this judgment the plaintiff in the cause has appealed to this court, in pursuance of rulings adverse to her at the trial by the trial court.

Although the appellee's claim for damages under his special plea exceeded the amount of the appellant's claim for rent, it will be noticed that there was no verdict for him for any balance. Either, therefore, the jury did not regard this claim with favor, or they regarded it as fully satisfied by the disallowance of the appellant's claim for rent.

The plaintiff at the trial proved the lease and the failure of the defendant to pay the stipulated rent payable on July 20 and August 20, 1902, and the water rent, and then rested.

The defendant thereupon offered evidence tending to prove that the plaintiff sought him in reference to the lease; that he informed her that he desired a house with grounds where his children could play; that the plaintiff informed him that the premises in question would answer his requirements; that thereupon they proceeded together to inspect the property; that it comprised a large old-fashioned garden in Georgetown, with a dwelling house in the middle of it, and a stable in the rear, between which and the house there were the posts of an old fence from which the railings had been removed; that the ground to the west of the house was fully 60 feet wide by 175 feet deep; that the ground to the east of the house, the dimensions of which are not stated in the record, extended to a hedge which separated the property from the adjoining premises on the east; that these premises to the east were designated as No. 3307, while the

premises in controversy were No. 3219, showing irregularity of some kind in the enumeration; that the plaintiff had informed him at the time of their visit that the premises No. 3219 extended eastwardly to the hedge and included all the unoccupied ground owned by the plaintiff in that square; that thereupon the lease was executed; that, prior to the execution of the lease, the plaintiff had informed the defendant that she contemplated the remodeling of the house and its conversion into two dwellings, for which she showed him the plans; that, if the defendant would permit this to be done during the tenancy, she would charge him no rent during the process of remodeling; that about March 1, 1902, the plaintiff entered upon the portion of the land lying between the dwelling house and the hedge, and commenced building thereon, against the defendant's protests, and expelled the defendant therefrom; that then there were adverse views expressed between them as to whether the land being built upon was in fact part of premises No. 3219 U street; that, at the time of his entry into possession, there was a large lot of brick upon this portion of the land for building purposes, with stakes and trenches dug for foundations, and the stump of a large tree cut down, leaving a large hole; that the plaintiff had stated to the defendant that it had been her intention to build there, but that she had abandoned her purpose; that the building operations were thereafter continued until his abandonment of the premises, although with unusual slowness; that during their progress building material was piled in front of the defendant's house, and loaded teams were driven through the garden in the rear; that a trench of a dangerous character was opened in front of the portion of the land taken for building purposes and permitted to remain open for a long time; that the new buildings closely approached the east side of his dwelling house and darkened his windows; and that numerous other annoyances were caused to him by these building operations.

On behalf of the plaintiff in rebuttal it was testified that she did not at any time represent to the defendant that all the land owned by her in the square was to be rented with the premises known as No. 3219 U street; that there was a subdivision of the

property on record in the office of the surveyor of the District, although it was impossible to tell from the records of the surveyor's office what constituted the premises No. 3219 U street; that the dilatory character of the building operations was not due to her builder, but to the authorities of the District; that, after the surrender of the dwelling house to her by the defendant, she had placed a watchman in it; and that there was an old fence in the rear of the dwelling house that divided it from the stable and the property to the north.

Upon this testimony two instructions were requested on the part of the plaintiff, which were refused and two on the part of the defendant, which were granted.* Exceptions were reserved by the plaintiff to the rulings of the court upon these instructions, and also to its admission of certain testimony on behalf of the defendant.

*Mr. John C. Gittings* and *Mr. John B. Moon,* for the appellant:

1. The admission of the evidence offered by appellee of conversation between them prior to the execution of the lease, under the guise of explaining an ambiguity in the lease, was error.

If the lease was ambiguous in failing to describe what was meant as "premises known as 3219 U street northwest," there was a proper way of explaining away this ambiguity.

2. The admission of the evidence which tended to show that, subsequent to the trial of this case before the justice of the peace, the appellant did certain acts which were tantamount to an acceptance of the surrender, was erroneous. The law is well settled that a surrender does not excuse the payment of accrued rent, even though the rent is payable in advance. *Learned* v. *Ryder,* 61 Bar. N. Y. 556; *Conklin* v. *White,* 17 Abb. N. C. 351; *Cameron* v. *Little,* 62 Me. 551; 18 Enc. of Law, sec. ed., 295, and cases there cited; *Atty. Gen.* v. *Cox,* 3 House of Lords Cases, p. 240.

3. The court erred in refusing to grant the appellant's first prayer, as the appellee had absolutely failed to offer a scintilla

[*The instructions referred to will be found set forth in the opinion.— Reporter.]

of evidence of actual damages sustained, and we contend in relation to this assignment of error, that, even though the jury should have found that the land taken by the appellant was embraced in the lease, there was no evidence offered to show that the appellee had sustained any damage thereby, as the law only gave him the right to recover the rental value of that portion of the land taken for the unexpired time of his lease, to be used in such a manner as contemplated by the terms of the lease. (*Warfield* v. *Walker,* 11 Gill & J. 80; *Kelly* v. *Shadd,* 10 Met. 317; *Williams* v. *Brown,* 76 Iowa, 643), and we submit that there was no use contemplated by the lease to which the land could have been put by the appellee, and therefore no damage could have been sustained in this respect.

4.   The court, in refusing to grant appellant's second prayer, we respectfully submit, erred. This prayer embraced a fair statement of the law involved in the case as ruled by the trial judge, *i. e.,* it left to the jury the right to say whether or not the appellant had ousted the appellee from a portion of the land, and, if they should so find, to estimate the damage done thereby. It is true that this prayer did not submit to the jury the right to consider whether or not there had been an acceptance of the alleged surrender of the property, but it must be too plain for argument, in view of the cases heretofore cited upon this point, that there was no evidence upon which such an instruction could be based.

5.   The granting of the appellee's first prayer, we contend, was absolutely unjustified in view of the evidence in the case. It will be seen from the record that it is based entirely upon what happened subsequent to the filing of the suit, and admission of which testimony was over our objection and exception noted.

6.   Even though the court should be inclined to believe that the rulings upon the evidence of the trial court were proper, and that the appellee was entitled to set-off against appellant's claim any damages he may have sustained, yet it was error to instruct the jury in appellee's second prayer that they could allow special damages in this case, there being no evidence of any special

damages whatever; and, further, in his plea of set-off, he does not claim to have suffered any special damages. We further contend that the record shows that the jury was absolutely left at sea as to what the appellant, the plaintiff below, was entitled to recover in this cause. There is no instruction whatever allowing them to find anything for the appellant, although as a matter of law the plaintiff was entitled to recover the sum of $83, admitted to be due, unless the appellee had sustained damages by reason of being ousted from a portion of the property described in the lease.

*Mr. Walter C. Clephane* and *Mr. Allan O. Clephane,* for the appellee.

1. The admitted evidence does not tend in the slightest degree to vary the written instrument. The lease is plain and unambiguous on its face. The defendant is claiming strictly under the very terms of the instrument itself. The difficulty involved in this case arises in the attempt to ascertain what is meant by the expression, "3219 U street," an ambiguity which arises only in the endeavor to locate the demised premises.

It will surely not be contended that under the description given in the lease no ground at all, not even a back yard, passed. The premises could hardly be considered a "dwelling" under such circumstances. If any ground was included, it therefore became essential to ascertain how much. See *Whelan* v. *McCulloch,* 4 App. D. C. 58; *Bradley* v. *W. A. & G. Steam Packet Co.* 13 Pet. 89; *C. & O. Canal Co.* v. *Hill,* 15 Wall. 94; *Barry* v. *Coombe,* 1 Pet. 640; *Reed* v. *Proprietors of Locks and Canals,* 8 How. 274; *Atkinson* v. *Cummins,* 9 How. 479; *Mobile & M. R. Co.* v. *Jurey,* 111 U. S. 584; *Reed* v. *Merchants' Mut. Ins. Co.* 95 U. S. 23; *U. S.* v. *Peck,* 102 U. S. 64; *Mason* v. *Spalding,* 18 D. C. 115; 1 Beach, Contr. § 581; Lawson, Contr. §§ 380, 382; *Ogilvie* v. *Foljambe,* 3 Mer. 52; *Hurley* v. *Brown,* 98 Mass. 545; *Sargent* v. *Adams,* 3 Gray, 72.

2. The acts of the plaintiff, as recited, being permanent in their character, constitute a partial eviction. which the defendant

had a right to treat as such a breach of the contract as would
absolve him from any further obligation to pay rent; and the
contract being terminated by this breach, he had a right to vacate
the demised premises at any time; or if he chose to remain for
a while until he should find a suitable home, he could, though
paying full rent under protest, subsequently claim damages from
the plaintiff for breach of her contract. 1 Taylor, Land. & T.
§ 315; *Chatterton* v. *Fox,* 5 Duer, 64. And the contract of
lease being an entire contract and having been broken by the
plaintiff, she could not apportion her own wrong, and therefore
would be disabled from maintaining any action at all against
him in this case, had he chosen to remain during the entire term
of the lease without the payment of any rent. But deeming it to
be the safer course to pay the entire rent during the period of his
occupancy, reserving his right of action against the plaintiff for
damages for violation of her lease, he has adopted that course,
vacating the premises when the nuisance became so unbearable
as to make it impossible for him to remain. This being his view
of his rights, he paid the full rent reserved in the lease during
the entire period of his occupancy, except for the ten days dur-
ing which he occupied the premises after July 20, for which
period he paid nothing, deeming that the rent for those few days
would be much more than offset by his claim for damages against
the plaintiff for breach of her covenant. 18 Am. & Eng. Enc.
Law, 2d ed., 322. The defendant's damages, as he contends,
would be the difference between the rent actually paid and the
reasonable rental value of that portion of the demised premises
which he was actually permitted to enjoy, together with the
special damages which he sustained by reason of the annoying
manner in which the building operations were conducted and
their injurious effect upon the portion of the premises left to him
and his enjoyment thereof. As to the reasonable rental value
of the portion of the premises which he actually enjoyed, the
evidence tending to show that, if the plaintiff should conduct
building operations upon the demised dwelling itself no rent
should be charged, was pertinent as tending to indicate the extent
to which the nuisance of building operations would tend to annoy

the defendant. See 1 Washb. Real Prop. *343, 345; *Christopher* v. *Austin,* 11 N. Y. 216; *Morris* v. *Kettle,* 57 N. J. L. 218; *Leishman* v. *White,* 1 Allen, 489; *Hayner* v. *Smith,* 63 Ill. 430; *Royce* v. *Guggenheim,* 106 Mass. 201; *Sherman* v. *Williams,* 113 Mass. 281; *Wright* v. *Lattin,* 38 Ill. 293; *Edgerton* v. *Page,* 20 N. Y. 281; *Dyett* v. *Pendleton,* 8 Cow. 727; *Skaggs* v. *Emerson,* 50 Cal. 3.

3. The rent in advance for the month commencing July 20 having accrued on that day, no matter whether she was in actual possession and enjoyment of the premises from August 1 or not, she is entitled to recover from the appellee for the entire month, because the rent having accrued on that day, there could be no apportionment of it for that month, and the whole $40 was therefore due. This proposition she supports by a number of authorities, which this appellee in nowise disputes as containing the technical doctrine of common law, in the absence of an agreement to the contrary. 18 Enc. of Law, 2d ed., 295; *Grimman* v. *Legge,* 8 B. & C. 324; *Whitehead* v. *Clifford,* 5 Taunt. 518; *Lamar* v. *McNamee,* 10 G. & J. 116.

But the record shows that the plaintiff had notified the defendant prior to entering into the lease that if he would permit her to enter upon the demised premises and remodel them no rent should be charged while the process of remodeling was continued. This evidence did not in any manner contradict the written contract, nor was it objected to upon any such ground. It was evidence of a collateral understanding, which should only become effective should the occupation of the premises be suspended during the tenancy by mutual consent. It could, of course, have no effect so long as the defendant chose to remain in the occupation of the demised premises, or so long as the plaintiff should insist upon his doing so. It is shown that the plaintiff, after the surrender of the premises, had proceeded to carry out her intention to remodel the dwelling-house. Under these circumstances it would certainly seem that the doctrine of the common law should not apply, such rule only being applicable in the absence of an agreement to the contrary. Jones, Ev. §§ 444, 445; *Lewis* v. *Seabury,* 74 N. Y. 409; *Witbeck* v. *Waine,* 16 N.

Y. 532; *Morgan* v. *Griffith,* L. R. 6 Ex. 71. Furthermore, this is
an action instituted before a justice of the peace, and appealed
by the plaintiff to the supreme court of the District of Columbia,
which court, under § 80 of the Code, is required to "hear the case
*de novo* upon the proofs and allegations of the parties, and deter-
mine the same according to law and the equity and right of the
matter." Surely it can hardly be contended that it would be
either equitable or right for the plaintiff, in full enjoyment of
her own property, to recover rent from the defendant for a
period after she had accepted his surrender from him; and yet
this is precisely the appellant's contention. While unquestion-
ably the strict rules of the common law, laying aside the "equity
and right of the matter," permitted this to be done, in the
absence of an agreement to the contrary, in all such cases her
right to recover must be predicated upon the theory that the term
really belongs to the lessee. If, therefore, the term belongs to
the lessee, and the lessor is in actual possession of her own volition
and reaping the profits thereof under such circumstances as not
to imply a gift of such rents and profits, then she is liable in an-
other action to the lessee for the use and occupation by her of
his property. As to this, it is supposed there can be no differ-
ence of opinion. 1 Taylor, Land. & T. § 19; *Coit* v. *Planer,* 4
Abb. Pr. 140; 1 Beach, Modern Law of Contracts, § 642.

In order to avoid circuity of action, §1563 of the Code pro-
vides that in the same action mutual claims may be set off
each against the other, "whether said debts or claims be of the
same or a different nature or degree, and whether the claims be
for liquidated debts or unliquidated damages for breach of con-
tract." Although there are no technical pleadings before a jus-
tice of the peace, nor in the supreme court of the District of
Columbia on appeal from such justice, and this right might
have been availed of without any formal plea of this character,
yet the appellee, deeming it more prudent to interpose the plea
of set-off, did so, and in his bill of particulars stated a claim
against the plaintiff "for use and occupation by plaintiff of
demised premises." This was equivalent to bringing a separate
action against the plaintiff for such use and occupation, merely

simplifying the procedure by adjudicating all the matters at issue in one suit, as is permitted by the Code.

The effect of the issues raised under these pleadings, therefore, is that, notwithstanding the technical rule of the common law, if the defendant should make a claim over against the plaintiff, as was done in the case at bar, the result would be a cessation of all liability to the plaintiff from the date of the acceptance of the surrender of possession, because from that date the plaintiff's liability to the defendant commenced to run. *Brohawn* v. *Van Ness,* 1 Cr. C. C. 366. In no case in which it has been held that there could be no apportionment of rent payable in advance, and that therefore the whole month's rent was due, notwithstanding the acceptance of the surrender, was a plea of set-off or such a demand as this interposed in the suit.

Mr. Justice Morris delivered the opinion of the Court:

1. It is contended by the appellant in the first place that it was error in the trial court to admit evidence of the conversation between the appellant and the appellee before the execution of the lease, under the guise of explaining ambiguity in the lease. But it is very clear to us that there was ambiguity in the lease, latent ambiguity, which oral testimony was admissible to remove; and that the testimony which was admitted was of a character to remove the ambiguity. There was no patent error in the lease. The expression, "premises No. 3219 U street," might or might not be sufficiently definite to designate a specific piece of property. In a fully-built district of a city occupied by houses, and with the metes and bounds of each piece of property distinctly marked by walls and fences, a street number might be amply sufficient to designate with clearness and certainty what was intended to be conveyed by a lease or demise in writing. But a street number affixed to a dwelling house situated as the property here in controversy was situated plainly does not import any such certainty. Where a dwelling house or residence is situated in the midst of a comparatively large tract of land, the nearest fence or hedge may ordinarily be presumed

to be the proper inclosure of the premises, unless the contrary is in some way made to appear. Under the contentions both of the appellant and the appellee, there must have been some limit intended by them of the demised premises to the east. The apparent limit was the hedge which has been mentioned. It was entirely proper and competent for the defendant to show by the declarations of the plaintiff herself, if she made any such declarations, which it was properly left to the jury to determine, that the demised premises extended to the hedge. No better testimony was available than these declarations. Strangely enough, notwithstanding that there were windows on the east wall of the dwelling house and the limit of the demised premises to the east must certainly have been at some distance from the wall of the house, there is no attempt whatever on the part of the plaintiff to show what that limit was.

It is clear to us, therefore, that there was latent ambiguity in the lease; and the law is too well established to need citation of authorities that oral evidence is admissible to remove such ambiguity. We are of opinion that the evidence admitted was the best evidence of its kind for the purpose, and therefore that there was no error in the ruling of the trial court in this regard.

2. It is argued in the second place, on behalf of the appellant, that it was error to admit testimony to the effect that before the execution of the lease the appellant had stated that she might remodel the dwelling house. But, as she did not remodel the dwelling house during the time of the appellee's occupancy, it is not apparent how this testimony, if immaterial and irrelevant, could have injuriously affected the plaintiff's case. The testimony was relevant, however, in connection with the theory of a surrender of the property by the appellee and an acceptance of such surrender by the appellant for the purpose of such remodeling, and the consequent release of the appellee from the payment of rent during such process, if there was in fact any agreement to that effect, which it was also left to the jury to determine.

3. It is also argued that the evidence was objectionable which was given by the defendant at the trial in the court below to the

effect that on the day after the trial of this case before the justice of the peace, but before the expiration of the term of the lease, the defendant discovered that the plaintiff had stored lumber on the front porch of the house and other portions of the demised premises. This evidence was introduced for the purpose of showing that the plaintiff has accepted a surrender of the demised property; and it is alleged that it was error to admit it, because a surrender of demised property does not excuse from the payment of rent, even though the rent is payable in advance. The appellant's authorities do not support her position. As stated in the American and English Encyclopædia of Law, second edition, vol. 18, page 295, cited by the appellant in this connection, the settled law is that a surrender of the demised premises, accepted by the lessor, ends the relation of landlord and tenant; and, when the surrender is between rent days, the tenant is discharged from all liability for rent even for the period between the surrender and the last rent day, for the rent is not to be apportioned. It is true that upon accrued rents, even though payable in advance, a surrender has no effect. (See the same authority and cases cited in the notes.) But here the testimony of the plaintiff herself is to the effect that the defendant vacated the premises about August 1, 1902, at which time the defendant claims the surrender to have taken place and to have been accepted by the plaintiff. Now, whatever may have been the result of such surrender on the rent which was payable on July 20, 1902, it would certainly have the effect, if proved to the satisfaction of the jury, to discharge the liability of the defendant for the instalment to become due on August 20, 1902. And with respect to that instalment, at least, the testimony complained of was admissible.

4. The first instruction to the jury requested by the plaintiff and refused by the court was this: "The jury are instructed as a matter of law that the plaintiff is entitled to recover the sum of $83, with interest from August 20, 1902." In view of the state of the evidence, this instruction would have been so palpably erroneous that it seems to require no discussion.

5. The second instruction requested by the plaintiff and also

rejected by the court was this: "The jury are instructed as matter of law that the plaintiff is entitled to recover the sum of $83, with interest from August 20, 1902, unless they shall find from all the evidence that the plaintiff trespassed upon a portion of the land demised under the terms of the lease, and if they shall find as a matter of fact that there was a trespass on the part of the plaintiff, then as a matter of law they must ascertain the damage, if any, done to the possession of the defendant by reason of said trespass, and in ascertaining said damage they can only take into consideration the actual value of that portion of the premises trespassed upon by the plaintiff, or her agents, to the defendant, to be used by him in the manner contemplated by the lease, and after ascertaining such damage, if any, to deduct the same from the $83, and interest from August 20, 1902, and render a verdict for the plaintiff for the difference."

This instruction, also, is so palpably erroneous, in view of the testimony and of the authorities on the subject, that extended notice of it is wholly unnecessary. There was testimony in this case, which the jury believed, tending to show an eviction of the defendant by the plaintiff from a very considerable part of the premises claimed to have been demised. Now, the law is that if a lessor enters and evicts a tenant wrongfully from a part of the demised premises, the eviction operates as a suspension of the entire rent until possession shall be restored. The lessor can not lawfully apportion his own wrong, and charge the lessee for the use and occupation of the portion which has been left to him. Washb. Real Prop. §§ 343–345; *Christopher* v. *Austin,* 11 N. Y. 216; *Morris* v. *Kettle,* 57 N. J. L. 218, 30 Atl. 879; *Royce* v. *Guggenheim,* 106 Mass. 201, 8 Am. Rep. 322; *Sherman* v. *Williams,* 113 Mass. 481, 18 Am. Rep. 522; *Hayner* v. *Smith,* 63 Ill. 430, 14 Am. Rep. 124; *Skaggs* v. *Emerson,* 50 Cal. 3; *Edgerton* v. *Page,* 20 N. Y. 281. The plaintiff, therefore, was not entitled to any such instruction as was here requested.

6. Objection is taken also to the first instruction requested on behalf of the defendant, and which was granted by the trial court. It was in these terms: "If the jury believe from the evidence that, prior to the expiration of the term mentioned in

the lease, and after the surrender of the premises by the defendant, the plaintiff did any act indicating an intention to accept such surrender and terminate the lease, then the plaintiff is entitled to recover nothing from the defendant subsequent to the date of such acts." The mode of expression of this instruction is open to some criticism; but it is not apparent that there was any mistake as to its meaning. The legal purport of it is that the plaintiff was not entitled to recover any rent 'that accrued · after the surrender of the property by the defendant, if that surrender was accepted by the plaintiff. Evidence of such acceptance might well be found, not only in what occurred at the time, but likewise in any subsequent action or course of conduct of the plaintiff. Thus understood, and with the support of such evidence, the instruction was correct.

7. The last objection on behalf of the appellant is to the second instruction granted on behalf of the appellee. This instruction is in the following terms:

"If the jury believe from the evidence that, prior to the defendant's surrender of the demised premises, the plaintiff or her agents took possession of any portion thereof by erecting structures of a permanent or temporary character thereupon, or by interfering with the defendant's quiet enjoyment thereof, then the defendant is entitled to recover from the plaintiff such sum, not in excess of the sum of $150, as the jury shall believe constitutes the difference between the rent paid by the defendant for the period between the beginning of such use and occupation and July 20, 1902, and the reasonable rental value of the remainder of the premises which the defendant was permitted to quietly enjoy, together with such other special damages, if any, as the jury may believe that the defendant suffered by reason of the acts of the plaintiff or her agents in depriving the defendant of the quiet enjoyment of the whole of the premises demised."

This instruction also is justly subject to some verbal criticism, and is not entirely free from obscurity. But no objection is taken to it on that ground. The objection to it is that no special damages could be allowed at all, since, as it is claimed by appellant, there was no evidence of special damage in the case, and

no claim of any special damage in the defendant's plea of set-off. But this objection involves a misapprehension both of the scope of the plea of set-off and of the tenor of the evidence in the case. The set-off is "for damage accruing to defendant for breach of the covenant for quiet enjoyment, and amount due for use and occupation by plaintiff of demised premises," and this claim is certainly broad enough to cover any damage accruing from the eviction, especially in a suit instituted before a justice of the peace, and wherein the decision is required to be, not in accordance with legal principles alone, but in accordance "with the equity and right of the matter" (Code, § 80). And there is ample evidence of special damage in the record,—as that the building operations were unusually protracted; that the garden in the rear was cut up by the passage thereon of loaded teams; that the appellee's windows were darkened; that trenches were left unguarded, which made it dangerous for the appellee's children to play near them, and that numerous other annoyances were caused to the appellee by such operations. These are all of them elements of special damage, which fully warranted the second instruction given to the jury on behalf of the appellee, and the instruction was as favorable to the plaintiff as she was entitled to have it.

The suit was one for rent. The substantial defense was the eviction of the defendant by the plaintiff from a large part of the demised premises and his practically compulsory surrender of the residue and of the whole property. There was ample testimony to go to the jury, tending to show such eviction and compulsory surrender, and we think that the rulings of the trial court thereon and upon the instructions requested were right and just. We find no error in them.

It follows that the judgment appealed from must be affirmed, with costs; and it is so ordered. *Affirmed.*