(91 Misc. Rep. 561)

### COHEN v. NEWMAN. (No. 324.)

(Supreme Court, Appellate Term, Second Department.   September, 1915.)

1. LANDLORD AND TENANT ⬤⇒37—LEASE—CONSTRUCTION.
   In case of ambiguity in a lease, it will be most strongly construed against the landlord, who prepared it.
   [Ed. Note.—For other cases, see Landlord and Tenant, Cent. Dig. § 98; Dec. Dig. ⬤⇒37.]

2. LANDLORD AND TENANT ⬤⇒130—LEASE—CONSTRUCTION.
   A lease described the property demised as all of a hotel building, with appurtenances. There was no other description by actual lineal measurements or by metes and bounds. The landlord owned adjoining property, and at the time of the demise there was a door and windows toward the rear of the building, with a sign "Café Entrance" over the doorway. Access to this door could be gained either from the street, by means of an alley or driveway, or from a plot of land owned by the landlord in connection with other buildings. *Held*, that the door and passageway over the landlord's other property constituted an appurtenance to the hotel, and the landlord breached his covenant of quiet enjoyment when he placed a brick wall on his other premises, shutting the doorway and cutting off the light from the windows, and tore down the vestibule.
   [Ed. Note.—For other cases, see Landlord and Tenant, Cent. Dig. §§ 470–481; Dec. Dig. ⬤⇒130.]

3. LANDLORD AND TENANT ⬤⇒190—RENT—PAYMENT—EXCUSE.
   A tenant's duty to pay rent is dependent upon the landlord's duty to protect the premises; and where the landlord partially evicts the tenant, in violation of his covenant of quiet enjoyment, rent is suspended, and a summary proceeding to regain possession for nonpayment cannot be maintained.
   [Ed. Note.—For other cases, see Landlord and Tenant, Cent. Dig. §§ 765–769; Dec. Dig. ⬤⇒190.]

   Maddox, J., dissenting.

---

⬤⇒For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

Appeal from Municipal Court, Borough of Queens, Fourth District.

Summary proceeding by Koppel Cohen against Rudolph Newman for recovery of possession of real property, demanded on account of nonpayment of rent. From an order of dismissal, the landlord appeals. Affirmed.

Argued September term, 1915, before MADDOX, CRANE, and BENEDICT, JJ.

Isidore Canner, for appellant.

Nathan H. Stone, of New York City, for respondent.

BENEDICT, J. This appeal is taken from a final order in a special proceeding for the recovery of the possession of certain real property situate in Jamaica, in the borough of Queens, by reason of nonpayment of rent, which order was made by the Municipal Court, Fourth District, Borough of Queens. The court below dismissed the proceeding, holding that there had been a partial eviction of the respondent by the appellant, and that the rent was suspended.

The real property in question, which was situated on the northeast corner of Fulton street and Bergen avenue, both public highways in Jamaica, was demised by lease dated April 17, 1914, made by the appellant, as landlord, to the respondent, as tenant, for the term of five years from April 20, 1914, the rent reserved being $1,425 per annum for the first three years and $1,725 per annum for the last two years, payable in monthly payments in advance on the 20th day of each month. The rent falling due June 20, 1915, was not, after demand duly made, paid, and the tenant has continued in possession of the demised premises. This proceeding was begun for the recovery of possession of said real property by reason of the nonpayment of said rent. The tenant interposed an answer setting forth facts from which he claimed a partial eviction from the demised premises.

[1, 2] The lease, which was typewritten upon a printed form, contained the following description of the premises thereby demised and of the term granted, viz.:

"All the hotel building known as No. 453 Fulton street, Jamaica, in the Fourth ward of the borough of Queens, city and state of New York, together with the chattels set forth in the schedule, a copy of which is hereto annexed, with the appurtenances, for the term of five years from the 20th day of April, 1914."

There was no other description, either by actual linear measurement or by metes and bounds. It was the *hotel building* as it was then known, with the appurtenances, that was the subject of the demise, and this necessarily implied the building, with its appurtenances, as it then existed. Its use at the time was taken into account. It was then and had previously been used by the landlord as a hotel, and it was contemplated by the lease that the tenant should continue its use in such business, because it is stated therein that the purpose for which the lease is made is the "hotel business," and that the tenant, during the period of time only in which he personally should be engaged in

such business, had the right to sublet such portions of the premises as are in conjunction with the purpose of the lease; i. e., hotel business.

The tenant, therefore, hiring property so described, would, under the terms of the demise, be justified in assuming a continuance, without let or molestation on the part of his landlord, of the hotel building, together with all existing physical conditions surrounding the subject of the demise. In other words, he would have the right to rely upon the express covenant contained in the lease that, upon performance of the covenants on his part, he should "peaceably and quietly have, hold, and enjoy the said demised premises for the term aforesaid."

There were at the time of the demise one door and two windows facing in an easterly direction in that part of the easterly wall of No. 453 which extended northerly of the rear wall of the adjoining and adjacent houses, which, with the space in the rear of them, were also owned by the same landlord, the petitioner herein. These openings in the wall of the deeper building, No. 453, furnished access and light and air to the rear room—the dining room—of No. 453. In addition, there was also a vestibule or storm shed at the doorway, extending about five feet to the east of the wall, onto land also owned by the lessor. This vestibule had on it a sign, with the words "Café Entrance" over the doorway. This sign was there while the landlord was carrying on the hotel business and when he rented the building to the tenant. The key to this door had been delivered by the landlord to the tenant upon giving possession, and was the only key so delivered. The demised premises and the other buildings belonging to the landlord and situated immediately to the east thereof abutted in the rear upon a driveway or alley leading to Bergen avenue.

There was evidence from which the trial court was justified in inferring that this door and vestibule were used by customers of the tenant, and that they furnished a more secluded means of entrance to and exit from the saloon and hotel than the other entrances, which gave upon the streets. Access to this door was gained either from the street, by means of the alley or driveway mentioned, or from the landlord's five other houses, or from the stables, garage, and covered shed shown on the exhibit (Birdsall's Survey), all of which opened on the driveway or alley. These buildings were all arranged so that any one could make use of the driveway or alley and of the open space owned by the landlord immediately in the rear of the five buildings mentioned. While it may be that the open space there would, if inclosed by fences, have formed private yards for the five houses, it was not so fenced when the lease was made, but had been and then was being used by many persons to gain access to the hotel building. The landlord must necessarily have been cognizant of this fact, and of the invitation to make use of it implied by the sign "Café Entrance" over the doorway, which could only be used by crossing some portion of the open space which he owned.

In April, 1915, the landlord, who, as has been noted, owned the five adjacent buildings, rented No. 455, immediately adjoining No. 453 to the eastward, to Merkle Bros., and in May, 1915, and there-

after, permitted or directed the erection of a one-story brick extension to the rear of that building, and closed by a brick wall the openings theretofore existing in the easterly wall of the corner building, and destroyed the storm shed or vestibule above mentioned. The tenant of No. 453 objected to this operation, and claimed that it constituted a partial eviction from the premises demised to him. On his refusal to pay rent, the proceeding from which this appeal is taken was begun. The court below has held, after hearing the parties, that the "side door constitutes an appurtenance and was leased as part of the property."

As I view it, the question resolves itself into this: Did the door and its storm shed or vestibule, and the land upon which the shed stood, and the windows on either side of the door, constitute part of the demised premises; and did the tenant, by reason of their existence at the time of the grant, acquire an easement of light, air, and access such as their presence would furnish as an appurtenance to the premises which were the subject of the demise? I think the question must, at least as to the door and its vestibule or storm shed, be answered affirmatively. It follows, as between him and his landlord, who owned the adjoining estate, that he (the tenant) acquired as part of his premises the door, vestibule, and storm shed, with the land on which they stood, together with a beneficial easement, for the term granted to him, over the servient estate adjoining his for their use as then existing. If there be any doubt growing out of obscurity of the terms of the demise, that doubt should be resolved against the lessor; but, as I look at it, no such doubt exists, for certainly the lessor did not use any words of restriction or limitation in his demise concerning the use of the doorway and storm shed; nor did he reserve to himself the right to close the one or remove the other at will during the term granted. As to the windows the rule may be different, because under the authorities the English doctrine of ancient lights has never been adopted in the state of New York, and no implied easements of light or air are recognized here. See Solomon v. Fantozzi, 43 Misc. Rep. 61, 86 N. Y. Supp. 754, citing Myers v. Gemmel, 10 Barb. 537, and other cases.

I think an entirely different situation exists here from that which was discussed in the Solomon Case, supra, and in De Baum v. Moore, 32 App. Div. 397, 52 N. Y. Supp. 1092. In the present case we have to deal, not alone with the closing of windows affording light and air which overlook an adjoining property, but also with a door giving access to the demised property over property owned by the landlord, and with an outside vestibule or storm shed used in connection with such entrance, the sign over which called attention thereto. In the De Baum Case the court held that, while the windows there in question might properly be closed up by an adjoining owner, he could not interfere with a flue in the party wall. But that was not a case like this. There each party, being a stranger, stood upon his own strict legal rights and owed no duty towards the other. Here the landlord is under not merely an implied, but an express, covenant, by his lease, not to interfere with his tenant's right of quiet enjoyment. When he rented the property, it had as an appurtenance a right of access over

his. adjoining land, which he could not disturb, and the right to go in and out of the door leading to his yard adjoining, and to use so much of his land as was covered by the vestibule or storm shed. Doyle v. Lord, 64 N. Y. 432, and cases cited at page 437, 21 Am. Rep. 629. As was said by Endicott, J., in Sherman v. Williams, 113 Mass. 481, 484, 18 Am. Rep. 522:

"The well-settled rule that the grant of a house carries with it the title to all the land under the house which the grantor owns extends to all the land covered or occupied by the house itself. As the eaves are a part of the building, the land under them is included in the description, when owned by the grantor. Where land is conveyed, bounded on a house as a monument, the land to the edge of the eaves only passes, that being the extreme part of the building; so, where the house itself is granted or demised, the extreme parts of the house are the bounds and limits of the conveyance, and such title as the grantor has to the lands thus occupied by the whole house passes by the grant or demise. Millett v. Fowle, 8 Cush. (Mass.) 150; Oarbrey v. Willis, 7 Allen (Mass.) 364, 83 Am. Dec. 688. By the conveyance of a mill, the land under the mill and its overhanging projections passes. Blake v. Clark, 6 Greenl. (Me.) 436."

The landlord having taken away a part of the demised premises, and excluded the tenant from using the land covered by the vestibule or storm shed, or having acquiesced in its accomplishment by one claiming under him, it seems to me that the case comes within the doctrine of actual eviction from a portion of the demised premises, and that the tenant was warranted in claiming, as he did, that the rent be suspended until restoration of his original rights.

[3] The tenant's duty to pay rent had its correlative in the landlord's duty to protect the possession. This is fundamental. Judge Daly in Vanderpool v. Smith, 1 Daly, 311, 314, says:

"The right of the tenant to have rent suspended, or, if he so elect, to abandon the premises, where he has been intentionally and wrongfully dispossessed of part by the landlord's act, is founded upon the reason, says Bacon (6 Abr. M., 2) 'that no man may be encouraged to injure or disturb his tenant in possession, whom by the policy of the feudal law he is bound to protect and defend.'"

I think there was here not a mere trespass, out of which eviction does not arise, but an actual deprivation of use of a valuable adjunct, appurtenance, or part of the demised property. See Sherman v. Williams, ubi supra; Denison v. Ford, 7 Daly, 384; Vermilya v. Austin, 2 E. D. Smith, 204; People ex rel. Murphy v. Gedney, 10 Hun, 151; Seigel v. Neary, 38 Misc. Rep. 297, 77 N. Y. Supp. 854; Stevens v. Salomon, 39 Misc. Rep. 160, 79 N. Y. Supp. 136; Sirey v. Braems, 65 App. Div. 472, 72 N. Y. Supp. 1044; Perniciaro v. Veniero (Sup.) 90 N. Y. Supp. 369; Adolphi v. Inglima (Sup.) 130 N. Y. Supp. 130.

Under these authorities, by reason of this actual partial eviction, I think the order in the summary proceeding was right, and should be affirmed. Order affirmed, with costs.

CRANE, J. (concurring). I concur with Mr. Justice BENEDICT, except that I go further. As this building was leased for a *special purpose,* the landlord could do nothing to interfere with the convenient and beneficial use for that purpose. Thus he could not block up the

side windows. The doctrine of ancient lights does not apply, as it is by implied agreement of the landlord that he is so prevented.

MADDOX, J. (dissenting). The demise here is the hotel building known as 453 Fulton street, Jamaica, on the northeasterly corner of that street and Bergen avenue, "together with the appurtenances, * * *" for five years from April 20, 1914, at $1,425 rent for the first three years and $1,725 for the last two years, payable monthly in advance. The building covers the whole lot, is 25 feet in width on Fulton street, 100 feet in depth along Bergen avenue; with four entrances from adjoining street and avenue, and also a number of windows therefrom and from the alley adjoining the northerly rear of said building. There is a party wall between the hotel building and 455 Fulton street, immediately adjoining on the east, the party wall extending to the rear of the building lot, and there were a door and two windows through said party wall to the rear of 455, opening from the dining room in the rear of the hotel building into a yard, 20 feet in depth, at the rear of 455, which building was 80 feet in depth and 23 feet in width. That yard, without an easterly division fence, extended northerly, from the rear of 455, 20 feet, to the private driveway or alley, about 13 feet wide, running easterly from Bergen avenue, 100 feet northerly from building line on the northerly side of Fulton street, along the rear of the building demised and the adjoining easterly property belonging to the landlord, with no fence between said 20-foot yard and said alley. On the outside of the door opening from the dining room into said yard there was a wooden storm shed, about 5 feet square, used by some of the tenant's patrons, for their convenience, in going from the rear of the adjoining buildings through the dining room, and then through two sitting rooms, to the tenant's saloon in the front of the demised building, on Fulton street. There is no proof or claim by the tenant that the door or windows leading to said yard had been used by him, or for his convenience. Indeed, as to the door, the contrary is shown, and also that all merchandise for the tenant was delivered and received at the Fulton street front.

In the course of the erection of a one-story extension upon said 20-foot yard at the rear of 455 Fulton street, the door and windows were bricked in and closed; the construction thereof being by the lessee of 455, and the landlord authorizing and acquiescing in the same. The landlord here also owned that building, which is immediately to the east of the hotel building here in question. The tenant here claims that a right to the continued use by him of the door and windows is fairly to be inferred from the words "with the appurtenances," and, consequently, that the closing of the same constituted a partial eviction and thus suspended the rent. The language of the lease is clear and precise; there is no expressed grant of a right of way over, or of any use of or easement in or upon, said 20-foot yard at the rear of 455 Fulton street, and the tenant took only that which he leased, together with everything then belonging to or in use for the building as an incident or appurtenance thereto.

No right to an easement of light and air in favor of the demised premises arises by presumption, unless such an easement is reasonably necessary for the beneficial use and enjoyment of the building rented; otherwise, it "never passes by implication." De Baum v. Moore, 32 App. Div. 397, 52 N. Y. Supp. 1092, affirmed on opinion below 167 N. Y. 598, 60 N. E. 110; Solomon v. Fantozzi, 43 Misc. Rep. 61, 86 N. Y. Supp. 754. From the proofs adduced it does not appear that the wooden storm shed was a permanent or an essential part of the brick building leased, or that the use of the door in question was necessary and essential to and for the beneficial use and enjoyment by the tenant of said building for the apparent purposes for which it was demised, since there would appear to have been ample and adequate means of access to and egress from the building on the front and side street and avenue, and there "can be no implication of a grant of a right of way of necessity, where the grantee has the means of obtaining access to the lands granted, without trespassing on the adjoining lands of his grantor, or the property of a stranger. If they can be approached from a public highway, * * * no right of way of necessity will be implied." Smyles v. Hastings, 22 N. Y. 217, 222; Fritz v. Tompkins, 168 N. Y. 524, 531, 61 N. E. 893.

The word "appurtenances" comprehends all that was attached to or used with the premises, as an incident thereto, and necessary and essential to the beneficial use and enjoyment thereof. But that word does not include an interest in the land in the yard at the rear of 455, since land never passes as appurtenant to land. Doyle v. Lord, 64 N. Y. 432, 437, 21 Am. Rep. 629; Griffith v. Morrison, 106 N. Y. 170, 12 N. E. 580; Stevens v. Taylor, 111 App. Div. 561, 97 N. Y. Supp. 925. Even if, previous to and at the time of the demise, a right of way across the yard or space here in question was shown to have existed, that right would not pass by the "word 'appurtenances' merely, but there must be particular or general words indicating an intention to grant the way." Parsons v. Johnson, 68 N. Y. 62, 65, 23 Am. Rep. 149. Such an intention does not appear in the lease, nor was it shown on the trial. In the Doyle Case, supra, it will be noticed that Judge Earl, at page 437 of 64 N. Y., used the words "convenient or essential to the beneficial use and enjoyment" of the estate granted; but the settled rule as to implied easements in favor of a grantee is now, in my opinion, dependent upon the easement being reasonably necessary and essential to such beneficial use and enjoyment. That they are a mere convenience is insufficient. Wells v. Garbutt, 132 N. Y. 430, 438, 30 N. E. 978; Paine v. Chandler, 134 N. Y. 385, 388, 389, 32 N. E. 18, 19 L. R. A. 99.

Without a right of way over the adjoining yard, the door here in question and the wooden storm shed in front would be of no benefit to the tenant, since its use necessarily depended upon the right to reach it from the adjoining alleyway or open space. Only such incorporeal easements, rights, or privileges as are reasonably necessary to the beneficial use of the estate granted will pass by the word "appurtenances," and a "mere convenience is not sufficient to thus create

such a right or easement" as is here claimed. Root v. Wadhams, 107 N. Y. 384, 394, 14 N. E. 281; Paine v. Chandler, supra.

For the foregoing reasons, and upon the case here presented, a partial eviction has not, in my opinion, been shown, and the final order should be reversed, and a new trial ordered.