THOMAS F. MALONEY, Appellant, *v.* THE IROQUOIS BREWING COMPANY et al., Respondents.

1. CONTRACT — TRIPARTITE AGREEMENT FOR SALE OF SALOON — WHEN "RECEIVE" SHOULD BE CONSTRUED AS "COLLECT." Where it appears that under a tripartite agreement providing for the sale of a saloon, a brewing company agreed to pay the purchase price in consideration that all the beer sold in the conduct of the business should be of its manufacture, and in addition to the regular price of the beer sold the vendee should pay to it the sum of two dollars per barrel until the purchase price was paid, that the brewing company agreed to *receive* the money, and when the sum of $1,200 had been received it would pay over to the vendor the whole purchase price of the saloon, it is the duty of the brewing company to collect the additional two dollars per barrel upon

all beer delivered at the saloon and apply the same for the benefit of the vendor, since the word "receive" must be construed as synonymous with the word "collect" and not as indicating that the brewing company was to become a mere custodian of the money and not liable to account to the vendor until the stipulated sum was in its possession.

2. NOMINAL CHANGE IN OWNERSHIP OR CONDUCT OF BUSINESS DOES NOT AFFECT THE RIGHTS OF THE VENDOR. The fact that, after the execution of the agreement, the vendee's wife continued the saloon business under a lease of the premises in her own name, does not release the brewing company from liability to the vendor, where it appears that the business was conducted by the vendee either for himself or his wife, and was a mere nominal, not a real or substantial, change in the ownership of the property or in the conduct of the business, and the company continues to enjoy the right to supply the saloon with all the beer used in the conduct of the business.

*Maloney* v. *Iroquois Brewing Co.*, 63 App. Div. 454, reversed.

(Argued December 3, 1902; decided January 20, 1903.)

APPEAL from a judgment of the Appellate Division of the Supreme Court in the fourth judicial department, entered September 9, 1901, affirming a judgment in favor of defendants entered upon the report of a referee.

The nature of the action and the facts, so far as material, are stated in the opinion.

*Simon Fleischmann, Harry L. Taylor* and *Eugene L. Falk* for appellant. Under the agreement between the parties the Iroquois Brewing Company was obliged to collect two dollars a barrel, in addition to the regular price, on all beer sold by it to Mallon, and plaintiff cannot be prejudiced by the failure of the brewing company so to collect said excess. (*Baldwin* v. *Humphrey*, 44 N. Y. 609; *Barton* v. *McLean*, 5 Hill, 256; *Wain* v. *Warlters*, 5 East, 10; *St. L. & D., L. & M. Co.* v. *Tierney*, 5 Col. 582; *Butler* v. *Thompson*, 92 U. S. 412; 158 U. S. 356; *Rogers* v. *Kneeland*, 10 Wend. 218; *Jugla* v. *Trouttet*, 120 N. Y. 21; Anson on Cont. [2d Am. ed.] 330; *Jones* v. *Kent*, 80 N. Y. 585; *Gillet* v. *Bank of America*, 160 N. Y. 549; *Robertson* v. *E. O. Co.*, 146 N. Y. 20.) The practical construction of the contract by the parties shows that it was their intention

that the brewing company should collect two dollars a barrel in excess of the regular price of all beer to be sold by the brewing company to Mallon. (*Ins. Co.* v. *Dutcher*, 95 U. S. 269; *Woolsey* v. *Funke*, 121 N. Y. 87; *Mayor, etc.*, v. *N. Y. R. C. Co.*, 8 Misc. Rep. 61; *Stokes* v. *Recknagel*, 6 J. & S. 368.) The conclusions of law of the referee and the judgment based thereon are wholly unwarranted by the findings of fact or the evidence in the case. (*Gillet* v. *Bank of America*, 160 N. Y. 549.)

*James O. Moore* and *Robert F. Schilling* for respondents. The terms of the tripartite contract are plain and explicit; there is no ambiguity nor lack of definiteness in the instrument; it is concise, clear and free from doubt and the obligations and intention of the parties can be readily ascertained from its context. (*Duchnes* v. *Heyman*, 2 App. Div. 354; *Gillet* v. *Bank of America*, 160 N. Y. 549.) The reasonable intention of the parties to a contract is to be sought in the words of such contract, not assumed; and it is not the duty of the court to bend the meaning of some of the words of a contract into harmony with a supposed reasonable intention. (*Crump* v. *McC. C. Co.*, 34 U. S. App. 598; *Benjamin* v. *McConnell*, 9 Ill. 536; *McConnell* v. *City of New Orleans*, 35 La. Ann. 273; *Hall* v. *F. Nat. Bank*, 53 Md. 120; *Schoonmaker* v. *Hoyt*, 140 N. Y. 431; *C. St. Ry. Co.* v. *Twenty-third St. Ry. Co.*, 149 N. Y. 56; Beach on Mod. Law of Cont. ¶¶ 703, 704; *Wadsworth* v. *Smith*, 43 Iowa, 439; *Herple* v. *Reinhart*, 100 Iowa, 530; *McClusky* v. *Cromwell*, 11 N. Y. 593; *Johnson* v. *H. R. R. R. Co.*, 49 N. Y. 455.) The liability of this respondent to appellant does not become complete until the brewery has received from Mallon $1,200, composed of payments of $2 per barrel, in addition to the regular price, for beer purchased by him from the company. (*B. H. Co.* v. *W. A. W. M. & R. M. Co.*, 152 N. Y. 547; *Gillings* v. *McLaughlin*, 18 Misc. Rep. 58; *Russell* v. *Allerton*, 108 N. Y. 292.) Where the language of a written instrument is clear and unambiguous, the acts of the parties cannot be considered in

respect to its construction. (*Giles* v. *Comstock*, 4 N. Y. 270; *Hill* v. *Priestly*, 52 N. Y. 635; *Norton* v. *Woodruff*, 2 N. Y. 155; *Albright* v. *Voorhies*, 36 Hun, 444; *Davis* v. *Schafer*, 50 Fed. Rep. 764; *Russel* v. *Young*, 94 Fed. Rep. 45; *Rouss* v. *Cuglow*, 103 Iowa, 60; *Crass* v. *Scruggs*, 115 Ala. 258; *L. Ry. Co.* v. *L. S. R. Co.*, 100 Ky. 690.) The transactions between the parties to this contract do not amount to a novation. (*Cuxon* v. *Chardley*, 3 B. & C. 591.) There can be no equitable estoppel where one party did not intend to mislead, and the other party was not actually misled. (*Jewett* v. *Miller*, 10 N. Y. 402; *Maloney* v. *Horan*, 12 Abb. [N. C.] 289; *McSwegan* v. *P. Ry. Co.*, 7 App. Div. 301; *Carpenter* v. *Cummings*, 40 N. H. 158.) The defendant was bound by the contract only to the extent of its promise. (*B. H. Co.* v. *W. A. W. M. & R. M. Co.*, 152 N. Y. 547; *C. E. S. Co.* v. *A. T. Co.*, 161 N. Y. 605.) To entitle plaintiff to recover it was incumbent upon him to show that the Iroquois Brewing Company actually received from Mallon $2 per barrel in excess of the regular price of beer to the amount at least of $1,200. (*Lorillard* v. *Silver*, 36 N. Y. 577; *Murray* v. *Baker*, 6 Hun, 264; *Hand* v. *Pennock*, 18 Misc. Rep. 570; *Blodgett* v. *Hall*, 11 Misc. Rep. 626; *Cartledge* v. *West*, 2 Den. 377; *Bagley* v. *Cohen*, 50 Pac. Rep. 4; *Brown* v. *Dutton*, 9 Cush. 209.)

O'BRIEN, J. The relief which the plaintiff sought in this action was an accounting between himself and the defendants under a tripartite agreement between them, the substance of which will be hereafter referred to. The case was tried before a referee, who reported in favor of the defendants and the learned court below has affirmed the judgment. There is little, if any, dispute about the facts and hence the question is whether the legal conclusions of the referee upon the facts found were warranted.

The learned referee found that on the 17th day of July, 1896, the plaintiff, as party of the first part, one Mallon, as party of the second part, and the Iroquois Brewing Company

as party of the third part, entered into a tripartite agreement concerning the sale of a saloon. The instrument commences with some recitals that are important in ascertaining the intention of the parties and the scope and meaning of the instrument. It is recited that whereas the plaintiff was then conducting the hotel business and was desirous of selling the same, with the good will, furniture and fixtures appertaining thereto, and that as the defendant Mallon was desirous of purchasing the business and property and continuing the same, and they had agreed upon the purchase price to be paid for the same at $3,000, and whereas the party of the third part, the brewing company, undertakes to pay for Mallon, the party of the second part, to the plaintiff, the party of the first part, the sum of $3,000, upon the terms, conditions and in the manner and form thereinafter set forth, the parties mutually stipulated substantially as follows : (1) The plaintiff was to execute and deliver to Mallon a bill of sale of the good will, furniture and fixtures belonging to or appertaining to the business and Mallon agreed to execute and deliver to the brewing company a chattel mortgage on the same as security for the payment by him to the brewing company of the sum of $3,000, to be paid as thereinafter provided, which mortgage should be a lien upon the property, furniture and fixtures referred to. (2) The method of payment was provided for in the following terms : Mallon agreed that all the beer sold in the conduct of the business should be of the manufacture of the defendant brewing company and that in addition to the regular price of said beer per barrel Mallon should pay to the brewing company the sum of two dollars per barrel, until the whole of the $3,000 should be paid. (3) That when Mallon should have paid to the brewing company the sum of $1,200 in that manner, he should thereafter pay to the brewing company upon the balance remaining unpaid semi-annual interest at the rate of five per cent. (4) The brewing company agreed to receive said money and when the sum of $1,200 should have been received it would pay over to the plaintiff the said sum of $3,000. The purpose

which was sought to be accomplished by this peculiar agreement is reasonably plain. When the plaintiff sold the business to Mallon he had been all along buying his supply of beer from the brewing company and all the parties intended to continue the supply of beer to the hotel, or saloon, from the same source. To that end the plaintiff and Mallon agreed upon a sale for $3,000, and the brewing company undertook to pay that sum as expressed in the agreement, and the substance of that was that the latter should be entitled to charge two dollars a barrel extra for the beer and apply the same upon the purchase price, and when $1,200 should have been received in that way to pay the balance absolutely. The defendant Mallon was to pay to the brewing company interest on the balance remaining unpaid, for the reason, evidently, that it had assumed and agreed to pay Mallon's debt, in consideration of the dealings to take place between them in regard to the purchase and sale of the beer. The bill of sale and chattel mortgage provided for were executed and delivered in accordance with that agreement. This vested the title of the hotel business, furniture and fixtures in Mallon, subject to the mortgage of the brewing company for $3,000, and the plaintiff was to rely upon the terms of the agreement for the payment of the purchase price. Mallon went into possession of the saloon, carried on the business and procured his supplies from the brewing company as provided in the agreement.

The referee found that the defendant Mallon did not pay to the brewing company the sum of two dollars a barrel upon all the beer purchased by him from the company in addition to the regular price for the same, but did pay to it the sum of $559.00; that under the terms of the agreement, and down to and including the last day of April, 1898, the brewing company sold to Mallon four hundred and fourteen and seven-eighths barrels of beer; that since the first day of April, 1898, until the time of the trial the business referred to in the agreement had been continued on the same terms by Mallon's wife, under a lease of the hotel to her made about that time;

that the business had been conducted for the wife by her husband and had been carried on continuously in and upon the premises since the making of the agreement to the time of trial by Mallon in his own behalf, or in behalf of his wife, and that from the first day of May, 1898, down to the time of the trial the brewing company sold to the wife four hundred and nine and three-fourths barrels of beer. It is obvious from these findings that the brewing company had sold and delivered to this saloon a sufficient quantity of beer to enable the company, if it collected the two dollars extra per barrel, to reduce the debt to the extent of at least $1,200. The contention of the defendants is, first, that the brewing company was only to *receive* the two dollars per barrel from Mallon when he paid it, and was not bound to collect it, and as they did not receive the money it is in no manner in default under the agreement. The second proposition is that since Mallon nominally turned over the saloon to his wife, and thereafter conducted the business in her name, all the time purchasing the beer from the brewing company, the latter could not collect the two dollars per barrel after this nominal change or transfer. It will be observed that the learned referee found that the business has been continuously conducted from the beginning by Mallon, either in his own behalf or in behalf of his wife. There is no finding that there ever was any real change of ownership of the property, or of the management in the conduct of the business.

We think that the fair construction of the agreement is that the brewing company was bound to collect the two dollars per barrel upon all beer which it delivered at that saloon and apply the same for the benefit of the plaintiff. That was the method which the parties agreed upon for the payment of the purchase price of the saloon to the extent of $1,200, and the brewing company could not continue to deliver beer at the saloon and leave it to Mallon to pay the two dollars or not as he might elect. Under the terms of the agreement the brewing company was given the same right to collect the two dollars on each barrel as to collect any part of the purchase price of

the beer.   It virtually agreed to charge to Mallon, and he agreed
to pay, for the beer two dollars over and above the market price,
and to apply what was received on such extra charge for the
benefit of the plaintiff.   In the construction of written contracts
it is the duty of the court, as near as may be, to place itself in
the situation of the parties, and from a consideration of the
surrounding circumstances, the occasion and apparent object
of the parties, to determine the meaning and intent of the lan-
guage employed.   Indeed, the great object, and practically the
only foundation of rules for the construction of contracts, is to
arrive at the intention of the parties.   This is a most con-
spicuous and far-reaching rule, and involves the nature of the
instrument, the condition of the parties and the objects which
they have in view, and when the intent is thus ascertained it
is to be effectuated unless forbidden by law.   Contracts are
not to be interpreted by giving a strict and rigid meaning to
general words or expressions, without regard to the surround-
ing circumstances, or the apparent purpose which the parties
sought to accomplish.   (*Gillet* v. *Bank of America*, 160
N. Y. 549.)   To hold that all the brewing company was
bound to do under this agreement was to receive such moneys
as Mallon voluntarily elected to pay would defeat the general
purpose of the agreement.   The company had bound Mallon
to buy all his beer from it and to pay the market price for the
same and two dollars extra per barrel to apply on the $3,000
purchase price of the saloon.   It could not go on delivering
the beer and collecting the market price therefor, leaving the
plaintiff to get the two dollars as best he could.   Hence, it
follows that since the brewing company was bound to collect
this extra charge, and could have collected it, it was liable to
account for the same to the plaintiff.   Any other construc-
tion of the agreement would be most unjust to the plaintiff.
It would deprive him of all security for the price of his prop-
erty while it would secure to the defendants every benefit
which they sought to obtain by the transaction.   The brew-
ing company secured a market for its beer and practically the
ownership of the saloon.   The plaintiff could not collect the

extra two dollars from Mallon for the beer, since the latter did not agree to pay it to him, but did agree to pay it to the brewing company, and if the latter was not bound to collect it and account for it, and Mallon might pay it or not as suited his convenience, it is difficult to see what the plaintiff got for the transfer of his property. The agreement of the brewing company to *receive* the money meant something more than that it was to become a mere custodian. It meant that when the company sold beer to Mallon it was to charge and collect from him two dollars per barrel over and above the regular market price and apply the extra two dollars on the plaintiff's debt. It had the power to do all that and the plaintiff had not.

The other proposition is, that since there has been some nominal change in the conduct of the saloon, the brewing company is under no further obligations to the plaintiff. It is still in the enjoyment of the right which it had secured by the contract of selling to that saloon all the beer used in the conduct of its business. It has not secured that right in any other way than under this contract. Mallon is still in charge, ordering the beer and paying for it. There is no finding in the record of any real or substantial change in the ownership of the property, or in the conduct of the business. The finding is that it is conducted by Mallon, either for himself or for his wife. We think that the obligations of the parties, as expressed in the writing, have not been affected by this nominal change. The brewing company had the right to charge and collect this extra two dollars for every barrel of beer that it delivered to the saloon, so long as Mallon was in charge and dealing with it. The defendants could not, by such a colorable arrangement between themselves, evade their obligations under the contract or deprive the plaintiff of its benefits. The brewing company is still selling its beer to the saloon in charge of Mallon. It still holds the mortgage and even advanced the money for the liquor tax certificate. It has the same right now that it ever had to exact the extra two dollars for every barrel of beer that it delivered to the

saloon and this right it acquired by the contract in question which conferred upon it almost absolute power over the property, the business and its management. The plaintiff cannot be deprived of the price of his property by mere forms that have effected no substantial change in the situation.

Hence it follows that in stating the account the referee should have charged to the company the extra two dollars for every barrel of beer that it delivered to the saloon.

There are some other questions in the case that have been elaborately argued by counsel, but we do not consider it necessary to consider them, since they may not arise upon another trial. The two propositions we have attempted to deal with are fundamental and when applied to the case will eliminate nearly all of the other questions and now require a reversal of the judgment.

The judgment should be reversed and a new trial granted, with costs to abide the event.

PARKER, Ch. J. (dissenting). If the majority opinion be right in saying that " We think that the fair construction of the agreement is that the brewing company was bound to collect the two dollars per barrel upon all beer which it delivered at that saloon and apply the same for the benefit of the plaintiff," then there is no gainsaying the conclusion reached therein, for more than six hundred barrels of beer were delivered at the saloon. But as the agreement does not say so in express terms, or otherwise, but instead expressly limits its operation to sales of beer to John H. Mallon, I am unable to see how the court can, by so-called construction, read into the agreement a provision that the brewing company bound itself to collect two dollars per barrel upon all beer which might be delivered at that saloon, no matter who should be the occupant and proprietor of it. It was bound to collect two dollars for plaintiff's account for every barrel of beer sold and delivered to Mallon, and the findings are to the effect that the entire amount of beer delivered to him down to and including the last day of April, 1898, when he transferred the business

and property to his wife, was four hundred and fourteen and seven-eighths barrels.

The findings are that thereafter she continued to run the business, for the eleventh finding (by which we are bound) is, " That since the 1st day of May, 1898, until the time of this trial, the said hotel business referred to in the tripartite agreement *has been* continued on the same premises *by* Cleopatra Mallon, the wife of the said John H. Mallon, under a lease of said premises in her own name, made to her about said last mentioned date, said business having been conducted *for* said Cleopatra Mallon, by her said husband, John H. Mallon; and said business has been carried on continuously in and upon said premises since the making of said tripartite agreement to the present time, either by said John H. Mallon in his own behalf (which necessarily includes the time from the signing of the agreement down to the first of May, 1898) or in behalf of his wife " (which covers the rest of the period).

Now, the agreement made the payment to plaintiff by the brewing company of the full purchase price dependent upon a sale to Mallon of six hundred barrels of beer. From the findings, as we have seen, it appears that he never sold Mallon any such amount. Therefore, the plaintiff did not become entitled either to twelve hundred dollars or the residue of the purchase price. But, it is said, this presents a very hard case for the plaintiff, and good faith required the brewing company to take action to protect the plaintiff. But that is precisely what the brewing company did, for when Mallon conveyed this property to his wife and she started to do business in her own name, the managers of the brewing company, realizing that the company would be unable to collect anything from her, and that Mallon had made it impossible to carry out the contract, at once offered to transfer to plaintiff all the rights which the company had in the premises, including the mortgage which had been given to it by Mallon. In the absence of evidence indicating misconduct on the part of the defendant brewing company or collusion between it and Mallon, this tender, it is quite apparent, was all that

equity and good conscience required of it; while legally, as is apparent from the facts stated, the plaintiff never became entitled to receive from it but $839.68, being two dollars a barrel for the beer sold to Mallon.

The judgment should be affirmed, with costs.

MARTIN, VANN, CULLEN and WERNER, JJ., concur with O'BRIEN, J.; PARKER, Ch. J., reads dissenting opinion; GRAY, J., absent.

Judgment reversed, etc.