In the Matter of the Summary Proceedings Brought by CHARLES W. HALL, as Landlord, Respondent, against GEORGE C. IRVIN, as Tenant, Appellant, and JOHN MILLER, Undertenant, the Name JOHN Fictitious, First Name Unknown to Petitioner.

*Landlord and tenant — right of a tenant in an office building to use water closets, etc., although not mentioned in the lease — eviction of the tenant from the use thereof owing to the alterations made by the landlord — when it justifies a refusal to pay rent — provision that no "latent defect or change of condition" shall create any claim.*

A lease of rooms on the seventh floor of an office building secures to the tenant the right to use water closets contiguous to the rooms rented, the wash basins therein, the elevators and hallways, stairs and entrance of the building, although such right is not expressly mentioned in the lease.

What evidence raises a question for the jury as to whether repairs and alterations made to the building during the continuance of a lease constituted such a mate-rial and substantial interference with the tenant's right to use the above-men-tioned appurtenances as amounted to a constructive eviction and prevented the landlord from maintaining summary proceedings to recover possession of the demised premises because of the tenant's refusal to pay rent for the period during which such eviction continued, considered.

A provision in the lease that no "latent defect or *change of condition*" should give rise to any claim against the landlord does not affect the right of the ten-ant to refuse to pay rent during the continuance of the eviction.

APPEAL, by permission, by the tenant, George C. Irvin, from an order of the Appellate Term of the Supreme Court, entered in the office of the clerk of the county of New York on the 9th day of May, 1902, reversing a final order of the Municipal Court of the city of New York, entered upon the verdict of a jury in favor of said tenant and undertenant.

This proceeding was begun in the Municipal Court to dispossess a tenant from rooms in the office building 140 Nassau street and tried before a jury. The petition avers that the tenant entered into an agreement with the landlord to rent four rooms on the seventh floor of the building at a rental of $1,000 a year from May 1, 1901, payable monthly in advance, and went into possession and still occupies the same; that on January first there was due the landlord for rent the sum of $500 for which the tenant defaulted in payment and without permission holds over and continues in the possession of the premises, wherefore the landlord prays for a final order removing said tenant. It was conceded upon the trial that the rent under the lease from August first to February first, amount-ing to $500, was unpaid, but the tenant contended that during the time, owing to repairs and alterations made in the building in the entrance, hallways, stairs, elevators, floors and lavatories, he was, as to them, put out of possession and thus evicted from a material part of the premises; and, therefore, the rent during such period was not payable and hence the dispossess proceeding could not be maintained.

A great deal of testimony was given upon the extent of the repairs which were made and the time during which the inconven-ience resulting therefrom continued; and it appears that the eleva-tors were altered and the service lessened, one being removed entirely from use; that the floors of the hall were removed and new

tiling laid, the stairs removed and temporary ones used until the new stairs were completed, the entire front entrance removed and a new entrance built, the water closets on the tenant's floor taken out and also the wash basins therein and the closets not replaced till January although a part of the time a ladies' closet was there and there was a closet on the floor below which, it was testified, was used by workmen and was in an unsanitary condition. During this time the halls were littered with barrels and dirt, and the entrance was by temporary and almost unprotected steps and visitors were put to great inconvenience in getting in and out of the building, and some of the repairs extended down to the latter part of January. It was testified that the alterations were contemplated and begun prior to the end of the old lease, April 30, 1901, and that the tenant urged that he be granted a reduction of the rent, and a reduction was made for six months of one-half, the amount to apply to the three months preceding and following the making of the new lease, May 1, 1901, and it was then stated by the landlord that he expected to complete the alterations by August 1, 1901, to which time the rent was reduced. There is some dispute as to just what the oral agreement thus made was, the landlord contending that the reduction was made in consideration of the alterations contemplated, whenever they should be completed, it being said that it was expected that the work would all be done by August first. The tenant contends that the agreement was that the rent should be reduced to one-half up to and including August first, upon the condition that the alterations were all completed at that time, and that as they were not so completed he is entitled to a further reduction. In support of this contention it is pointed out that the one who made the agreement between the landlord and tenant testified that he told the latter he expected the alterations to be completed by August first, and it " was in consideration of that that three months' rent was allowed " from the making of the lease.

The Municipal Court submitted the issues to the jury and a verdict was returned in favor of the tenant, and from the judgment so entered the landlord appealed to the Appellate Term. That court held that the facts did not warrant the jury in finding that there was an actual eviction of the tenant by the landlord from any substantial portion of the premises ; that the water closets and

basins were not an integral part of the rooms leased, the depriva-
tion of the wash basin being temporary and the closets on the floor
below being available to the tenant, and that the inconvenience of
the alterations was not such as amounted to eviction, and the tenant
had been informed when the lease was made of the proposed altera-
tions and been allowed a deduction therefor. In a concurring
opinion it was pointed out that the lease itself provides that the
lessor shall not be responsible for any "latent defect or *change of
condition*" nor other damage to the premises nor for overflow of
water, etc. The judgment of the Municipal Court entered on the
jury's verdict was, therefore, reversed and a new trial ordered, and
from the order so entered the tenant brings this appeal.

*Henry Schmitt,* for the appellant.

*Lemuel Skidmore,* for the respondent.

O'BRIEN, J.:

It is for us to determine upon the evidence whether the judge of
the Municipal Court was right in submitting the questions as ones
of fact to the jury, or whether the Appellate Term was right in
determining them as matters of law.

The use of closets contiguous to the rooms rented and of the
wash basins therein, of the elevators and hallways, stairs and
entrance of the building, was included though not mentioned in the
lease, and the right to use them passed to the tenant. As said in
*Doyle* v. *Lord* (64 N. Y. 437): "The general rule of law is that
where a house or store is conveyed by the owner thereof, every-
thing then belonging to and in use for the house or store, as an
incident or appurtenance, passes by the grant." And in Wood on
Landlord and Tenant (2d ed. § 47) it is said: "If a person take lodg-
ings on the first and second floors of a house, he has a right to the
use of the door bell, the knocker, the skylight, of the staircase, and the
water closet and every other convenience connected with the building
essential to the comfortable enjoyment of the leased portion, unless
it be otherwise stipulated." And in *Hamilton* v. *Graybill* (19 Misc.
Rep. 521) it was said that the fact of the existence of the water
closet on a floor "may have been materially persuasive upon the
respondent when he accepted the lease of the rooms and which

because not expressly excluded passed with the demise, although not particularly alluded to." McAdam on Landlord and Tenant says (Vol. 1 [3d ed.], p. 269) : " The term ' appurtenances ' received a broad and liberal meaning by the Court of Appeals in *Doyle* v. *Lord* (64 N. Y. 437). The court said : ' That word would give him ' (the tenant) ' whatever was attached to or used with the premises as incident thereto and convenient or essential to the beneficial use and enjoyment thereof.' "

There seems to be no necessity for arguing this general proposition, it being conceded that a tenant is entitled to have access through the door, halls, stairs, floors and elevators and the use of the wash basins and closet in order to enjoy the rooms he occupies, and these elements are factors in determining the sum to be paid as rent under the lease. If the tenant, deprived of such appurtenances, had moved out pending the repairs and had then been sued for the rent, could it be held as matter of law that he was liable therefor ? The answer would depend on whether or not those appurtenances were a material and integral part of the demised premises, and whether the loss or deprivation to the tenant was substantial for a sufficiently long period of time, so as to constitute an eviction. If immaterial and temporary, the tenant could not retain possession and refuse to pay the rent.

Upon the evidence we think that conflicting views might be taken as to whether the alterations were so material and substantial in character as to amount to an eviction, or whether they were of such an immaterial and temporary kind as not to affect injuriously the enjoyment of the demised premises. Unless the former conclusion had no basis for support in the evidence there was properly a question for the jury. (*Hamilton* v. *Graybill, supra ; Simmons* v. *Cloonan,* 81 N. Y. 557.)

It was testified that during the period access to the building and elevator and stairs was so interfered with that dangerous conditions existed down to the latter part of January ; that the closet and wash basins were removed during the time and not replaced till the latter part of January, and that the closet on the floor below was unsanitary owing to the use by the workmen. The extent of the repairs, the time consumed in making them, how far they affected in a substantial way the tenant's enjoyment of the premises, were all ele-

ments to be considered by the jury upon the question of fact presented, as to whether or not the defendant's acts constituted an eviction. The evidence bearing upon this subject, we think, supports the jury's verdict that they did, and in this conclusion we differ from the learned Appellate Term, which held, as matter of law, that they did not.

We also differ from the conclusion of the Appellate Term on the other branch of the case, that the acceptance of a reduction in the rent estopped the tenant. The agreement of reduction made when the lease was entered into rested in parol, and there was a serious conflict as to its terms. We have the two versions, one by the landlord, the other by the tenant, and thus a question of fact was involved which it was the province of the jury to determine. Nor do we think that the provision in the lease that no "latent defect or change of condition" should give rise to any claim against the landlord has any material bearing on the questions discussed, because the complaint of the tenant did not relate to latent defects. To extend this provision of the lease, therefore, so as to cover damage flowing directly from the positive acts of the landlord, would leave the tenant without any protection under his lease.

There being then a basis for the finding by the jury that the alterations and deprivations did materially interfere with the enjoyment of the premises and the appurtenances given by the lease, it follows that the tenant was, by the act of the landlord, evicted from a part of the leased premises. As said in *Peck* v. *Hiler* (24 Barb. 178): "An interruption of the enjoyment of a privilege conferred by a lease by physical means adopted by the landlord constitutes an eviction and suspends the rent of the   *   *   *   premises, and the remedy of the lessor for the recovery of the possession." And in *Sirey* v. *Braems* (65 App. Div. 472) it was held (head note) that "the eviction of a tenant from a portion of the demised premises suspends, during the continuance of the eviction, the right of the landlord to maintain summary proceedings against the tenant for non-payment of rent."

We have not overlooked the contention that the court erred in its charge to the jury. To that portion, however, which is particularly objected to no exception was taken, and, upon an examination, we think the charge was in all respects fair and proper.

Our conclusion, therefore, is that the order of the Appellate Term should be reversed, with costs, and the judgment entered on the verdict of the jury in the Municipal Court affirmed, with costs.

VAN BRUNT, P. J., PATTERSON, McLAUGHLIN and LAUGHLIN, JJ., concurred.

Determination of Appellate Term reversed, with costs, and judgment entered on verdict of jury in the Municipal Court affirmed, with costs.