Bernard S. Meter, J.
This action for a declaratory judgment and an injunction was brought by Dr. and Mrs. Lemkin as taxpayers and by Dr. Lemkin, individually, as a tenant in the building known as the Hempstead Medical Center, and by Dr. Lemkin as representative of Hempstead Medical Center Tenants Association. By stipulation, that portion of the action seeking representative relief was withdrawn. The action seeks a declaration that the Village of Hempstead was without power to cancel a declaration of trust which restricts to use as a private park until June 26,1963, a two and one-half acre area in front of the center (hereafter referred to as the “ open area ”); a declaration that the erection of apartment buildings on the open area is in violation of Dr. Lemkin’s rights as a tenant; an injunction prohibiting the issuance of a building permit or the erection of *145 any buildings; and a mandatory injunction directing the execution and recording of a cancellation of the cancellation. A motion for summary judgment with respect to Dr. Lemkin’s individual cause of action, predicated on the parol evidence rule and a merger clause in plaintiff’s lease, was denied by Mr. Justice Christ (16 Mise 2d 1003), and that denial was affirmed (8 A D 2d 944).
The open area is part of a tract of approximately five acres which in 1953 was owned by defendant corporation. The tract was roughly triangular in shape, one side, approximately 610 feet long, fronting on Hilton Street, the second side, approximately 600 feet long following the village line east from Hilton Street to the Long Island Rail Road tracks, and the hypotenuse being formed by the railroad tracks. A mapped but unopened street, named Wendell Street, ran south from the village line to the tracks parallel and distant approximately 295 feet from Hilton Avenue. The open area which is the subject of this action consists of the 200 feet closest to Hilton Avenue and was then and is now zoned Residence B; the remainder of the tract west of Wendell Street was then and is now zoned Business B; and that portion of the tract east of Wendell, Business C. Intersection Street was shown on the map, although it had never been opened, running east from and perpendicular to Wendell Street to the railroad tracks and beyond. Since neither Wendell Street nor Intersection Street had then been opened, the corporation had access to its business property only across that portion zoned residential.
On May 7, 1953 the corporation by letter addressed to the Village Planning Board offered to dedicate to the village a strip approximately 51 feet by 295 feet running from Hilton Avenue along the village line to Wendell Street and, provided the street were accepted as a public highway, to install the new street, to be known as Medical Place, and also those portions of Wendell and Intersection Streets west of the railroad tracks and further offered to: “ agree not to erect any new buildings on the property other than the Medical Center for a period of ten years from the date of acceptance of the dedication of the street ” and further to landscape the open area: “as a park and will maintain the same as a park for ten years from the date of acceptance of the dedication of Medical Street by the Village.” After public hearing before the Planning Board on May 18, 1953 and the Village Board of Trustees on June 16, 1953, the dedication was accepted. On June 26, 1953 a declaration of trust executed by the corporation on June 1, 1953 was recorded. In its preamble, the declaration recited that dedication ‘ ‘ will be *146 accepted by the said Village provided stipulations are entered into for the benefit of the public at large respecting the use of the other premises owned by said corporation ” and then the corporation declared that it would:
“ [U]se the lands * * * for the following uses and purposes and no other, to wit: * * *
“ 2. To grade and landscape [the open area] as a private park and maintain the same as such for a period of ten years from the date of recording of this instrument in the office of the County Clerk of Nassau County, without dedication, however, of such land to the public or for the public use, but reserving the right to permit such doctors, patients and others connected with the Medical Center to have access to and enjoy such private park for relaxation and other lawful purposes. # * #
“7. It is expressly agreed that this corporation will not erect any new building on the premises other than the structure presently contemplated as herein stated for a period of ten years from the date of recording of this instrument in the office of the County Clerk of Nassau County.
“ 8. This declaration and the stipulations and covenants herein contained shall expire ten years from the date of recording of the within declaration in the office of the County Clerk of Nassau County. Nothing herein contained shall be construed to limit the right of this corporation to place walks across [the open area] for access to the Medical Center building of persons approaching the same from Hilton Avenue. ’ ’
Erection of the medical center was not begun until some time later; the first tenant moved in about July 1, 1954, and it was September 1, 1954 before the building was completely habitable. Plaintiff, who on July 30, 1953 had entered into a lease for a term of 10 years beginning June 1,1954, moved in on September 1,1954.
On December 15, 1954 the corporation entered into a contract to sell the building, as a result of which defendant partnership, which is wholly unrelated to the corporation, took title to the building on March 1, 1955. The December 15, 1954 contract recited the declaration of trust and it was referred to in the title report. Philip F. Green, the managing partner, testified that he had discussed it with Samuel Meiselman, secretary of the corporation, who told him that its purpose had been to permit him to obtain a special exception to add two hospital floors to the medical center building. An application for such an exception was made by the corporation and was denied in November, *147 1953, because no adequate provision was made for parking, without prejudice to a new application if parking spaces were arranged for.
In October, 1957 the attorneys for the partnership advised Village Counsel that the partnership took the position that the declaration of trust was illegal, as, in effect, zoning by contract, and Village Counsel having so advised the Village Board, it on March 18, 1958, by a resolution which stated no reason for so doing, authorized execution of an instrument, theretofore executed by both the corporation and the partnership, canceling the declaration of trust. The partnership having applied for a building permit to erect two apartment buildings containing 94 units on the open area, the instant action was begun. The village and the partnership have defended the action; the corporation has not.
The first cause of action, by Dr. Lemkin and his wife as taxpayers, must be dismissed. Much has been said in the briefs about the validity of the declaration of trust, but the court does not find it necessary to decide that question. If, as defendants argue, it was illegal, there would be no impropriety in the village joining in a cancellation of record. If, on the other hand, it was legal, its cancellation was a legislative act, the motives behind which cannot be inquired into, and which this court cannot set aside at the suit of a neighboring owner. (Leitman v. City of Yonkers, 193 N. Y. S. 2d 967, affd. 10 A D 2d 950, motion for leave to appeal denied 11 A D 2d 703.) While the Leitman case concerned a restriction, imposed by the city in a conveyance of city-owned property, which included specific provision for release, neither distinction makes a difference in the result here reached. If the release of a restriction imposed by the city in conveying its own property may not be invalidated, a release of a restriction received as a gift (or, if plaintiff’s version is correct, as consideration for accepting dedication of Medical Place) likewise may not be; and if the city has no power to release such a restriction because imposed in the public interest and for the public good, obviously it cannot grant itself such power by the simple device of reciting in the conveyance that it has it.
The second cause of action, by Dr. Lemkin, as a tenant, is not so readily disposed of, however. Plaintiff urges in support of this cause of action (1) that the open area is part of the demised premises, the use of which is protected under the covenant of quiet enjoyment contained in the lease, and (2) that the partnership having taken with notice of facts sufficient to put it on inquiry is equitably estopped from using the open area for other than a private park. For the reasons hereafter stated, the court *148 holds plaintiff entitled, on the second canse of action, to an injunction as prayed in the complaint but not to reformation of the lease.
Plaintiff’s lease was of “ Suite No. 2A, a plan of said suite being attached hereto, made part hereof and marked Schedule ‘ A ’ in the building to be erected on a plot bounded approximately by Hilton Avenue, Garden City line, Wendell Street and the Long Island Railroad,” and it is stipulated that all of the other original leases of space in the center set forth the same description. Defendant urges that that description covers only the rooms that make up the suite and grants no interest in the land and that even if it did, the open area is physically separated from the land on which the center stands and must be considered adjoining premises rather than part of the demised premises. The distinction is an important one, for, as Doyle v. Lord (64 N. Y. 432, 439) makes clear, a tenant of a portion of a premises can obtain rights in adjoining premises only by express grant, but is entitled, in the absence of restrictive words, to an interest in the yard of the premises of which his leased space is a part, not as a portion of the land demised to him, but because he has an easement in the yard in common with all other tenants for all purposes for which it could be used in common. While it is true that the open area can be distinguished from the land on which the center itself stands by a marked difference in grade and by an open rustic fence, the area is physically contained within the boundaries by which the lease describes the plot on which the center building was to be (and was) erected. It is also true that paragraph 14 of the lease provided: “No vaults, vault space or space not within the property line of the building is leased hereunder, anything contained in or indicated on any sketch, blueprint, or plan, or anything contained elsewhere in this lease to the contrary notwithstanding. Landlord makes no representation as to the location of the property line of the building ’ ’, but defendant is not helped by that provision. In the first place, we are now considering not what space was leased, but upon what plot stands the building in which space was leased. In the second place, paragraph 14 is a part of a printed form lease, whereas the description quoted above is a typewritten insertion in the lease, and, therefore, will control the printed provision. In the third place, extrinsic evidence may be received for the purpose of identifying the plot on which the center was to stand. (Sirey v. Braems, 65 App. Div. 472; People ex rel. Murphy v. Gedney, 10 Hun 151, 154.) That evidence, in the form of statements made by Samuel Meiselman to plaintiff, of the architect’s rendering *149 shown on the sign on the premises about which plaintiff and several other tenants testified, and of an advertisement published by the corporation in the April 14, 1953 issue of the Nassau Review-Star (Ex. 12) stating: “It [the Center] will occupy 5 acres of ground with approximately 2 acres in front of the building set aside as a tastefully landscaped and shrubbed botanic setting forming a park-like atmosphere, and 2 additional acres in the rear of the building as a parking area ’ ’ all confirm that the area in question forms a part of the plot of the center itself, and is not to be considered as a separate adjoining plot.
Such being the case, plaintiff has, as an incident of his lease of the suite and notwithstanding the absence from the lease of the word “ appurtenances ” (Kingsway Realty & Mtge. Corp. v. Kingsway Repair Corp., 223 App. Div. 281, 284; Bauer v. Schwartz, 122 Misc. 630, affd. 209 App. Div. 827; People ex rel. Murphy v. Gedney, supra), an easement over the area in question provided only that such easement is £ £ convenient or essential to the beneficial use and enjoyment ” of the suite. (Doyle v. Lord, supra, p. 437; Ogden v. Jennings, 62 N. Y. 526, 531; Cohen v. Newman, 173 App. Div. 976, revg. on dissenting opinion below 91 Misc. 561, 569; Matter of Hall v. Irvin, 78 App. Div. 107.) Such an appurtenant easement need not be “ absolutely necessary to the enjoyment of the property” but only necessary to its full enjoyment. (Simmons v. Cloonan, 81 N. Y. 557, 566.) While mere convenience is not sufficient, reasonable necessity to beneficial enjoyment (Anixter v. Bangor Realty Corp., 104 Misc. 613, 616), or to the “comfortable enjoyment of the leased premises ” (Matter of Hall v. Irvin, supra) will be. In this connection whether the existence of the appurtenant right was materially persuasive upon the tenant when he accepted his lease has important bearing (Matter of Hall v. Irvin, supra; Hamilton v. Graybill, 19 Misc. 521, 522), as does any evidence of the intention of the parties. (Stevens v. Salomon, 39 Misc. 159.) In this context, it must be held that maintenance of the open area is necessary to the full enjoyment of the leased suite. Plaintiff is in error in urging the location of the building entrance and the fact that the building is lmown as 230 Hilton Avenue as indicia of necessity, for the lease expressly reserves the right to change both (par. 13). But the landlord’s advertising and the “ sales talk ” about which Dr. Lemkin testified clearly indicate that both landlord and tenant contemplated that the open area would remain open, in order to maintain the building as a “ modern professional building * * * aloof from the congested business district ”. The existence of the open area, providing a buffer from noise, assur *150 ing both easy visibility from a main thoroughfare and privacy, established a unique professional setting. Plaintiff testified and the court finds that that setting was materially persuasive on him in moving from his former location in a highly commercial area; it requires no stretch of imagination to infer that the lease as made would not have been concluded had it been clear that the building would be located on a dead-end street off the main thoroughfare and behind two apartment buildings and their 94-car parking lot. Agreeing that erection of the apartments will not materially affect the light and air for plaintiff’s suite, the court nonetheless concludes that the recognition of light and air, access to privies, playgrounds for children, garden, recreation and parking space as necessary to full enjoyment of leased space (Doyle v. Lord, supra; Brande v. Grace, 154 Mass. 210; Arguita v. Mayfair-Blushing Corp., 198 N. Y. S. 2d 116, affd. 10 A D 2d 711; Leventhal v. Straus, 95 N. Y. S. 2d 883; Stevens v. Salomon, supra) mandates the like recognition of the professional setting, quiet, privacy and accessibility referred to above. Defendant argues that plaintiff’s failure “to set foot on” the open area during the six years of his occupancy militates against the conclusion reached, but the purposes for which the open area is necessary to full enjoyment of his lease do not necessitate his physical use of the area. Defendant argues further, that paragraph 33 of the lease, which provides that in the event of a sale, or of a lease of the building, or of the land and building, landlord is released from all obligations under the lease, negates any easement since the building could be separated from the land. That argument overlooks the provision of paragraph 33 that the purchaser or lessee shall be deemed to have agreed to carry out all obligations of the landlord, and that, therefore, the separation referred to, though it might change the nature of the relief that could be granted, would not change the substantive obligation encompassed in the lease. Bather than negate any obligation, paragraph 33, in fact, makes the easement referred to and the covenant of quiet enjoyment contained in paragraph 22 of the lease binding upon defendant partnership without affirmative action on its part.
Not only did defendant partnership take subject to the implied easement above discussed, but it also took subject to an easement by representation and estoppel. An easement by representation may be established by extrinsic evidence notwithstanding a general merger clause and the parol evidence rule, unless in view of the surrounding circumstances, the agreement was one the parties would ordinarily be expected to embody in the writing. (Smith v. Community Synagogue, 309 *151 N. Y. 733; Lemkin v. Gulde, 16 Misc 2d 1003, affd. 8 A D 2d 944; Feigen v. Green Harbour Beach Club, 25 Misc 2d 101; cf. Woodmere Park Assn. v. Cedarpoint Realty Co., 279 App. Div. 672.) Mr. Justice Christ’s decision in Lemkin v. Guide (supra) establishes that the restriction claimed herein was not such an agreement, and while that decision was on motion for summary judgment, nothing developed by the evidence furnishes a basis for altering that conclusion.
The court finds that it was represented by defendant corporation by the newspaper advertisement quoted above and by oral representation to Dr. Lemkin that the area in front of the building would be maintained as a park-like or open area. Defendant points to Dr. Lemkin’s testimony that the representations included statements that the old house on the area would be torn down and benches installed, neither of which has been done, as affecting his credibility. Any question of credibility is set at rest, however, by the newspaper advertisement and by the declaration of trust both of which show unequivocally the intention of defendant corporation to maintain the area as a park, and by the testimony of Dr. Taft that Meiselman made similar representations to him. Nor may plaintiff’s failure up to this time to insist on his rights with respect to the house and benches, which affect his interests only slightly, be considered a waiver of his right to enforce the representation against the erection of apartment buildings. Since, as already indicated the court finds that plaintiff relied upon the representations so made and would not have entered into the lease had it not been represented that the area would be kept open, an estoppel existed in favor of plaintiff against defendant corporation’s denying the truth of Meiselman’s representation or the existence of the easement. That estoppel is enforcible against defendant partnership as well, if it had notice of the easement or equity created by the representation, or of facts sufficient to put it on inquiry concerning such an easement or equity.
It is conceded that the contract of sale between the partnership and the corporation and the title report received by the partnership both referred to the declaration of trust and that Philip P. Green discussed the declaration with Samuel Meiselman. Since the declaration required maintenance of the 200-foot setback, neither the fact that the setback physically existed nor that it was pictorially represented on a sign would be sufficient to put the partnership on inquiry about Meiselman’s representation even though the court were to find that members of the partnership had seen the sign. But the court holds that, although the representation which is the basis of the easement *152 by estoppel was not identical with the restrictive covenant contained in the declaration, notice of that covenant and of the fact that it antedated the leases of many of the tenants, including plaintiff Lemkin, was sufficient to put the partnership on notice of possible rights of the tenant requiring inquiry of the tenants themselves. Defendant partnership’s contention that the “no representation” clause in the leases would have warranted limitation of its inquiry to examination of the leases cannot be sustained in view of the decisions concerning merger clauses and parol evidence referred to above. Any reasonable inquiry made of the tenants would have disclosed the representation made in the newspaper advertisement and by Meiselman, orally. Admittedly there was no inquiry of any tenant prior to the partnership’s taking title to the building. Under the principles enunciated in Williamson v. Brown (15 N. Y. 354) and Reed v. Gannon (50 N. Y. 345), and applied in Anderson v. Conner (43 Misc. 384) and Gibbs Oil Co. v. Elowits (9 Misc 2d 843) to tenants’ rights as against a purchaser of the fee, the partnership, having introduced no proof to repel the inference, is chargeable with constructive notice of what such inquiry would have revealed.
It follows that plaintiff is entitled to relief on the basis of both an implied easement and an easement by estoppel. Defendant argues that on 'balancing the equities, plaintiff should not be granted an injunction, since the defendant will be deprived of the right to substantial income from the proposed apartments whereas plaintiff’s evidence does not clearly show that he will suffer any economic loss if injunction is denied. The answer, however, is found in White v. La Due & Fitch, Inc. (303 N. Y. 122) where it was urged that there was an adequate remedy at law and that, therefore, an injunction- to enforce an equitable estoppel should not issue. 'Said the court, at page 128: “It is urged that plaintiffs Floris sustained no damage, although they bought their home from respondents and continue to occupy the same in reliance on the respondents’ representation. We see no merit in this contention (Tallmadge v. East Riv. Bank, 26 N. Y. 105, 109; Phillips v. West Rochaway Land Co. [226 N. Y. 507], supra; Hofmann v. Hofmann [283 N. Y. 730], supra). Moreover, the parties had the right to determine for themselves in what way and for what purposes their property should be occupied, irrespective of pecuniary gain or loss or the effect on the market value of the lots (Trustees of Columbia Coll. v. Lynch, 70 N. Y. 440, 453).”
While plaintiff is, therefore, entitled to an injunction, he is not entitled to reformation of the lease. The basis of the injunc *153 tion is implication and estoppel. The evidence does not establish clearly and positively that the parties intended to restrict the open area by express covenant to that effect; therefore, the right to reformation has not been established. (Hofmann v. Hofmann, 283 N. Y. 730.)
Judgment will, therefore, be entered dismissing the first cause of action, but enjoining defendant partnership from erecting any structure on the two and one-half acre area during the term of plaintiff’s lease. Since no relief is requested against defendant corporation, the complaint is dismissed as to it, without costs. Costs are awarded plaintiff against defendant partnership.