█ M. N. S. BRANDELL, INC., Appellant, v. ROOSEVELT NASSAU OPERATING CORP. et al., Respondents.— In an action for a declaratory judgment, injunctive relief and damages, plaintiff appeals from a judgment of the Supreme Court,

Nassau County, entered July 28, 1972, in favor of defendants, after a nonjury trial. Judgment affirmed, without costs. No opinion. Martuscello, Acting P. J., Shapiro and Brennan, JJ., concur; Gulotta, J., dissents and votes to reverse the judgment and to remand the case to the trial court for the granting of relief to plaintiff in accordance with the following memorandum, in which Benjamin, J., concurs: Plaintiff is a tenant in the Roosevelt Field Shopping Center selling books, candy, stationery and novelty gift items. In this action against its landlord (defendant Roosevelt Nassau Operating Corp.) and others, plaintiff seeks a declaration of rights, injunctive relief and damages for invasion of its rights under a leasehold. The appeal is from a judgment which denied it any relief. The genesis of plaintiff's grievance is the construction in 1970 of Alexander's department store in an area which from 1963, when plaintiff's lease was made, had been part of the parking field which bordered the Center to the east of the tenanted premises. Plaintiff's store is 175 feet in length by 40 feet in width. The westerly entrance fronts on Fountain Mall, a north/south promenade connecting Gimbel's on the north with Macy's on the south. The east or rear entrance looks out upon a 15-foot sidewalk which traverses the shopping center on the east from north to south, formerly with free access to the large parking field. It is a corner shop on the south side of Building E, with display windows across the eastern and western ends of the store, each of which continues for eight feet along the southernmost wall of the building. This southerly side of the building faced upon an attractive 39-foot wide corridor between Building E and Building D, decorated with growing trees and shrubs, and provided benches for weary shoppers. It also served as the connecting link between the east parking area and the Fountain Mall. Plaintiff pays $5 per square foot for this corner location, as opposed to $3.50 per square foot which is charged for inside stores. Defendants have constructed the large Alexander store itself in the former parking field in such close proximity to plaintiff's premises that, together with the new parking deck built to service it (the Alexander store), it effectively cuts off plaintiff's premises from the flow of traffic and exposure they formerly enjoyed. Plaintiff is particularly aggrieved by defendants' conversion of the major part of the former corridor into a new store and entrance to Alexander's, leaving in its place a dingy, artificially lighted hall, 12-foot wide at its widest point, narrowing down to five feet where a fire stairway has been moved into it from its former place which is now occupied by the new store. The 15-foot sidewalk east of the building which served traffic moving north and south is now blocked by two sets of glass doors (see plaintiff's exhibits 12A, 12B and 12D) which constitute a continuation of the entrance and new store from the Fountain Mall to the main Alexander store. These doors may be locked when Alexander chooses and thus no traffic from the south can find its way to plaintiff's establishment except by some other circuitous route. To contend that these changes have not seriously and drastically reduced the value of the leasehold for which plaintiff bargained back in 1963 is to deny the incontrovertible. The justification for all this is said to be a reservation by the landlord in the lease to do these very things. One looks in vain in the lease for any such provision. In the first place this is a lengthy, detailed, preprepared, printed lease drafted by the landlord's attorneys to be used exclusively for Roosevelt Field Shopping Center leasings. Nothing is better settled than that such a document is to be construed strictly against the draftsman, i.e., *contra proferentem* (*United Water Works Co.* v. *Omaha Water Co.*, 164 N. Y. 41; *Gillet* v. *Bank of Amer.*, 160 N. Y. 549; *Rentways, Inc.* v. *O'Neill Milk & Cream Co.*, 308 N. Y. 342), and the rule is frequently applied in cases of contracts on printed forms prepared

by one of the parties (*Brandt* v. *Godwin,* 3 N. Y. S. 807, affd. 15 Daly 456). Appropriate to this case, the Court of Appeals said in *Black* v. *General Wiper Supply Co.* (305 N. Y. 386, 390) : " ' The law is well settled ', this court recently wrote, ' that changes in a lease are not to be presumed or implied; and no additional liability will be imposed upon a tenant unless it is clearly within the provisions of the instrument under which it is claimed. If the instrument contains any ambiguity it must be resolved against the landlord and in favor of the tenant.' (*455 Seventh Ave.* v. *Hussey Realty Corp., supra,* 295 N. Y. 166, 172.) Here, the landlord, who drew the lease, specified that the tenants were to ' pay * * * all water rents and water taxes * * * charged against * * * the demised premises ', but, in contrast, said nothing of possible sewer rents. This, of itself, goes far toward establishing the parties' purpose that any other charges levied against the property be borne by the landlord." Yet the justification for what the landlord has done in this case is claimed to lie in the fact that there is no specific prohibition in the lease forbidding it. This is an attempt to put the boot on the wrong foot. Rather it is incumbent upon the landlord to demonstrate that it had the right to so drastically alter the existing easements and physical conveniences which were so integral a part of this lease as clearly shown on the aerial photo and the site plan, erroneously excluded from evidence (see *Wilkinson* v. *Nassau Shores,* 1 Misc 2d 917, affd. 278 App. Div. 970, mod. 304 N. Y. 614). Under article 5 of the lease, entitled " Common Areas ", such areas are defined as (a) parking areas, (b) the truckway, (c) the loading dock, (d) public conveniences of the Center and (e) all other areas in the building and the Shopping Center, including the so-called " Mall " to be used in common by the tenants. Actually there is nothing labeled a " Mall " on exhibit A annexed to the lease, but we find what was meant by this term by examination of plaintiff's excluded exhibit 3 for identification, which shows a Fountain Mall on which plaintiff's store fronts and a Flight Mall to the west of it. The critical part of this lease is an unnumbered paragraph of article 5 reading as follows: " Landlord reserves the right to make changes, additions, alterations or improvements in or to such common areas; provided, however, that there shall thereby be caused no unreasonable obstruction of Tenant's right of access to the demised premises or any unreasonable interference with Tenant's use of the demised premises." To escalate this simple right to make changes and alterations into a full fledged right to erect new buildings in any " Common Area " of the Center, especially in favor of the one who chose the language, is in my opinion highly unreasonable and contrary to the ordinary rules of construction. By way of illustrating its extremity, it would permit the landlord to obstruct the Fountain Mall with a building, so long as it left a passage to get into plaintiff's front door. Nor can I see any justification for holding that another paragraph of article 5, which imposes an *obligation* on the landlord to maintain adequate parking if it constructs any additional buildings, creates *a right* in the landlord *by implication* to construct new buildings any place it pleases. In *Phillips* v. *West Rockaway Land Co.* (226 N. Y. 507) lots were sold to the plaintiff as oceanfront lots both because of their physical layout and as shown on a map which, however, was not used in the deed description. The map contained an inscription reserving to the seller a broad right to the beach front and the beach front was orally represented to be for purposes of constructing a boardwalk. It was held that the reservation to the seller would not authorize a later attempt by the seller to sell building lots between the plaintiff's lots and the ocean. It was held (p. 515): " At time of the sale and as part of the same transaction defendant subjected the land south of plaintiff's lot to be a permanent, open and con-

tinuous service or easement in favor of the part sold to plaintiff, save that defendant might erect a boardwalk thereon. Defendant was thereafter equitably estopped from asserting title to and a right to sell the lands south of plaintiff's lots. (*Trustees, etc.* v. *Smith,* 118 N. Y. 634; *Matter of Franckel,* 157 N. Y. 603; *Rogers* v. *Salmon,* 8 Paige, 559; *Lampman* v. *Milks,* 21 N. Y. 505.)" Maps, like written agreements, should be construed in the light of the surrounding circumstances (*Maloney* v. *Iroquois Brewing Co.,* 173 N. Y. 303, 310; *Gillet* v. *Bank of Amer.,* 160 N. Y. 549, 555). The rule is the same where a lease is involved rather than a sale. In *Doyle* v. *Lord* (64 N. Y. 432) the plaintiff rented the ground floor of a building in Manhattan for use as a store from the landlord's predecessor in interest. The rear yard was vacant and contained privies for use of the building tenants. There were also windows in the rear of the store which received their daylight from the yard. The yard was not mentioned in the demised premises. It was held, nevertheless, that the plaintiff could enjoin the defendants, who had subsequently leased the whole building subject to the plaintiff's lease, from building in the rear yard, since the plaintiffs were entitled to enjoy an easement in the yard. The court said (p. 439): "The light passing into the windows from the yard was essential to the beneficial use of the store, and it was clearly the intention at the time the lease was made that plaintffs should have it. To this extent, in any view of the case, the plaintiffs were entitled to enjoy an easement in the yard. They were so far interested in it, that the defendants could not change its condition to their detriment." It was said that the easement passed as an appurtenance to the leasehold, although concededly there was no express easement. In a more modern vein, it was held in *Lemkin* v. *Gulde* (16 Misc 2d 1003, affd. 8 A D 2d 944) that a tenant in a building used as a medical center on a five-acre plot who rented a dental office could enjoin the construction of an apartment house on the front 2½ acres, which a declaration of restrictions given to the municipality had pledged to keep as an open area and as a private park for 10 years. The suit was based both upon the restrictive declaration and upon a right to enforce an easement by implication and representation, although reference to neither was made in the lease. In the second *Lemkin* v. *Gulde* case (25 Misc 2d 144) the injunction was granted, but only on the second ground (i.e., the implied easement), the ground which concerns us herein, the municipality in the meantime having cancelled the restrictive declaration, because it deemed it illegal. To the contention that proof of the easement violated the parol evidence rule and the merger clause in the lease (a contention similarly made in this case), Mr. Justice Christ pointed out in the first *Lemkin* case that where an outside service such as the free bus service promised in *Fogelson* v. *Rackfay Constr. Co.* (300 N. Y. 334) was not involved, but rather the use of another part of the same parcel of property, many cases supported the propriety of proving an easement by implication, citing *Phillips* v. *West Rockaway Land Co.* (226 N. Y. 507, *supra*) and *Hofmann* v. *Hofmann* (172 Misc. 378, affd. 259 App. Div. 820, mod. 283 N. Y. 730). (See, also, *Weil* v. *Atlantic Beach Holding Corp.,* 1 N Y 2d 20.) In the second *Lemkin* case (25 Misc 2d 144, *supra*) Justice Meyer expressed the same idea in the following language (pp. 150–151): "Not only did defendant partnership take subject to the implied easement above discussed, but it also took subject to an easement by representation and estoppel. An easement by representation may be established by extrinsic evidence notwithstanding a general merger clause and the parol evidence rule, unless in view of the surrounding circumstances, the agreement was one the parties would ordinarily be expected to embody in the writing. (*Smith* v. *Community Synagogue,* 309 N. Y. 733; *Lemkin* v. *Gulde,*

16 Misc 2d 1003, affd. 8 A D 2d 944; *Feigen* v. *Green Harbour Beach Club,* 25 Misc 2d 101; cf. *Woodmere Park Assn.* v. *Cedarpoint Realty Co.,* 279 App. Div. 672.) Mr. Justice Christ's decision in *Lemkin* v. *Gulde* (*supra*) establishes that the restriction claimed herein was not such an agreement, and while that decision was on motion for summary judgment, nothing developed by the evidence furnishes a basis for altering that conclusion." It was further said of the easement which Lemkin sought to enforce (p. 149): " Such being the case, plaintiff has, as an incident of his lease of the suite and notwithstanding the absence from the lease of the word 'appurtenances' (*Kingsway Realty & Mtge. Corp.* v. *Kingsway Repair Corp.,* 223 App. Div. 281, 284; *Bauer* v. *Schwartz,* 122 Misc. 630, affd. 209 App. Div. 827; *People ex rel. Murphy* v. *Gedney, supra*), an easement over the area in question provided only that such easement is 'convenient or essential to the beneficial use and enjoyment' of the suite. (*Doyle* v. *Lord, supra,* p. 437; *Ogden* v. *Jennings,* 62 N. Y. 526, 531; *Cohen* v. *Newman,* 173 App. Div. 976, revg. on dissenting opinion below 91 Misc. 561, 569; *Matter of Hall* v. *Irvin,* 78 App. Div. 107.) Such an appurtenant easement need not be ' absolutely necessary to the enjoyment of the property ' but only necessary to its full enjoyment. (*Simmons* v. *Cloonan,* 81 N. Y. 557, 566.) While mere convenience is not sufficient, reasonable necessity to beneficial enjoyment (*Anixter* v. *Bangor Realty Corp.,* 104 Misc. 613, 616), or to the ' comfortable enjoyment of the leased premises' (*Matter of Hall* v. *Irvin, supra*) will be." The atmosphere of professional offices which Lemkin sought to protect in his lease was but a pale replica of what the plaintiff in this case is trying to preserve. In terms of sheer diminution in the value of plaintiff's leasehold, it far transcends the esthetic values which were at stake in *Lemkin* and which were vindicated by the decision. So far as injunctive relief is sought, the present *fait accompli* would seem to foreclose that, but that it is no reason to deny plaintiff financial recompense for the damage it has suffered. I would reverse the judgment, grant judgment to plaintiff on the merits and remand the case to the trial court for such relief as it deems appropriate under the circumstances, either equitable or in damages, or both.